Sannoner v. Jacobson & Co.

## SANNONER v. JACOBSON & CO., AND OTHER CASES

### AGAINST THE SAME APPELLEES.

1. **ATTACHMENTS:** *Intervention by second attacher.*
   A junior attaching creditor may intervene in a prior attachment suit, and there contest his rights with the plaintiff in that suit; but he can not be let in to defend the suit and dispute the grounds of the attachment in lieu of the defendant, nor to defeat the attachment for mere errors or irregularities in the proceedings; but only for imperfections which are unamendable and render the proceedings void.

2. **SAME:** *Complaint and affidavit.*
   There can be no attachment without a complaint; and properly the affidavit for attachment should be distinct from the complaint, but both may be included in one paper; and if only the affidavit be filed it will be sufficient for both, if it contains all the essentials of both.

3. PLEADING: *Complaint omitting prayer for judgment.*

The omission from the complaint, of a prayer for judgment is not a fatal defect.

4. ATTACHMENT: *The affidavit on belief.*

An affidavit for an attachment must be positive. If made upon belief only, the attachment may be quashed. But it is amendable and not void, and therefore is not assailable by an intervenor in the action.

APPEAL from *Perry* Circuit Court.
Hon. J. B. WOOD, Circuit Judge.

*U. M. & G. B. Rose* and *E. B. Henry* for Appellants.

The first question that strikes us in reading the transcript in this case is, by what right were the appellees, H. Aronson, Menken Bros., Berry, Jack & Co., and Hill, Fontaine & Co., allowed to intervene, and take advantage of informalities in the proceedings of the appellant? They were only subsequently attaching creditors. They had no equities superior to those of the appellant. They had no rights which were entitled to protection in preference to his. Their claims were no more meritorious; and if they are allowed to defeat his priority, it must be upon plain grounds.

Nothing is better settled than that one attaching creditor can not take advantage of formal defects in the proceedings of another.

Mr. Drake says: "As before remarked, whatever irregularities may exist in the proceedings of an attaching creditor, it is a well settled rule that other attaching creditors cannot make themselves parties to those proceedings for the purpose of defeating them on that account. Nor can a subsequently attaching creditor take advantage of any waiver made by the attaching defendant which causes no substantial injustice to such creditor." *Drake on Attachments, 5 ed., sec. 273.*

Mr. Kneeland says: "While it is true that subsequent attachment creditors can not take advantage of mere irregular-

Sannoner v. Jacobson & Co.

·ities existing in the practice of the senior attachment creditor, they may question all jurisdictional defects therein, or the *bona fides* of the levy, or the validity of the claim forming the cause of action under which the same issued." *Kneeland on Attachment, sec. 504.*

Mr. Waples says : " As a general rule, one attaching creditor can not intervene in the suit of another to defeat it for irregularities in the proceedings." *Waples on Attachment, p. 477.* See also *3 McCord, 201, 345; 2 Bailey, S. C., 209; 9 Missouri, 397; 5 Pick., 303; 13 Barb., 412.*

" Under the Code the sufficiency of the affidavit on which an ;attachment issued is no longer a jurisdictional question. Hence, an attachment will not be set aside on motion, upon the ground that the affidavits upon which the same were issued did not set forth facts sufficient to give the officer jurisdiction. It is now ·under the Code a mere question of regularity in issuing process, in the progress of an action, which none but a party to the .action, injuriously affected by it, can take advantage of." *13 Barb., 412; 46 Barb., 43; 9 La. An., 8; 18 Cal., 152; 12 Ohio .St., 158; 6 Nebraska, 163; 49 Ala., 575; 87 N. C., 103; 17 S. C., 116; Ib., 120; 15 Nevada, 215; 16 Nev., 388.*

These cases establish the principle beyond all question; .and though it must be conceded that the affidavit in this case ·is insufficient, as being upon belief, it is perfectly settled that the intervenors were not entitled to profit thereby. Even if ·the objection had been taken by the defendant, the attachment ·ought not to have been quashed, but leave should have been .given to amend the affidavit. *Rogers v. Cooper, 33 Ark., 406; Nolan v. Royston, 36 Id., 561; Tilton v. Cofield, 93 U. S., 163; Allen v. Clayton, 11 Fed. Rep., 73.*

The attachment and the summons were in one writ: but ·that was entirely proper, and has received the approval of this ·court. *Weil v. Kittay, 40 Ark., 529; Rice v. Dale, 45 Ark., 35.*

Sannoner v. Jacobson & Co.

Under the common law, the question of the sufficiency of the affidavit for attachment was jurisdictional; and when, for any reason, it was set aside, the entire action fell with it. *Edmonson v. Carnall, 17 Ark., 284; Hellman v. Fowler, 24 Id., 235; McDonald v. Smith, Id., 614.* But as was decided in the New York case above referred to, and in *Holliday v. Cohen, 34 Ark., 712,* the attachment proceedings upon the adoption of the Code ceased to be of jurisdictional importance, and were relegated to the position of an ancillary remedy, defects in which were in no way fatal to the prosecution of the action.

The question is therefore simply reduced to this: Did the plaintiff have a suit in court in which a valid judgment could have been rendered? If he had, then the judgment in favor of the intervenors was erroneous, for they had no right to interfere. Let us then proceed to consider this question.

It is well settled that the affidavit and the complaint may be combined in one document.

"The requirement of an affidavit to be filed in the clerk's office before an attachment can issue, is sufficiently met by the filing of a petition, sworn to, and containing the allegations required to be made in an affidavit. The petition supplies the place of, and dispenses with, a separate affidavit." *Drake on Attachment, sec. 90 a.*

"A sworn petition may embrace both the character of a petition and of an affidavit." *Waples on Attachment, p. 81.*

This being true, we have to inquire whether the paper filed at the institution of this suit, and upon which the summons was issued, was a sufficient statement of facts to be regarded as a complaint in the action. As is clearly shown by the numerous authorities cited above, the complaint does not have to be perfectly regular. Junior attachment creditors cannot take advantage of mere informalities. If there is on file anything that can serve as the foundation of an action, however inartificial it may

be, it is enough as to them. They can complain only when they are injured by the substance of the transaction. If there is anything that can be amended into a good complaint, it is sufficient. The *omission of a prayer for judgment* is not fatal. *Mansf. Dig., secs. 5080, 5081, 5083; 27 Ark., 148; 15 Id., 555; Pom. Rem., sec. 580; 1 Estes Pl. & Pr., 252; Newm. Pl. & Pr., 664; 10 Cal., 193; 58 Ind., 575; 20 How. Pr., 191; 50 Ind., 447.*

A complaint showing merits, however inartificially drawn, should never be peremptorily dismissed, but leave should be given to amend. *27 Ark., 225; 30 Id., 771.*

*Cohn & Cohn* and *Carroll Armstrong* for Appellees.

I. Have we a right to intervene?

"Any person may , . . . before the payment to the plaintiff of the proceeds thereof, or of any attached debt, present his complaint, disputing the validity of the attachment, [and] an interest in or lien on it under any other attachment," etc. *Mansf. Dig., sec. 356.*

Whatever disputes may originally have existed, in the absence of legislation, or adequate legislation, as to the right of an attaching creditor to intervene at law, either because he had no lien until his attachment was served, or because law courts did not take cognizance of interventions, or because the proper proceeding was in chancery, it is now settled by the provisions of some of the Codes, and of the Code of this state, that a junior attaching creditor (there is no apparent occasion for a senior one doing so) may intervene in the proceeding of the senior creditor, and dispute the validity of the attachment.

Nor does the provision contain anything to indicate that the junior attaching creditor must have a judgment; it implies the contrary, for as the attacking attaching creditor is the junior one, and as the senior creditor is more apt to obtain a judgment

and distribution before the junior, it must be that the junior's right to attack must precede the judgment on the senior's attachment, as that judgment settles the question of validity. See *Speyer v. Ihmels, 20 Cal., 281.* Moreover, if the junior creditor must wait until he gets a judgment, it would be very easy for a senior creditor and a debtor to render the beneficial provisions mentioned abortive. In this very cause, the senior creditors, with the debtor's consent, endeavored to get a distribution before the junior creditors could do anything, on the first day of the term; though that fact does not appear. See *The Mary Anne, 1 Ware, 104; Waples Att., 475; Cooper v. Reynolds, 10 Wall., 308.*

That a judgment is not necessary, is not only clear from what has been said, but is equally indicated by the authorities cited herein, in which that seems to be regarded wholly immaterial, upon the hypothesis, no doubt, that if a senior attachment was warranted that of the junior was likewise warranted. See *Speyer v. Ihmels, 20 Cal., 280; Swift v. Crocker, 21 Pick., 241; Baird v. Williams, 19 Ib., 381; Carter v. Gregory, 8 Ib., 164; Peirce v. Partridge, 3 Met. (Mass.), 44; Bamberger v. Halberg, 78 Ky., 377; Cohn v. Hager, 30 Ark., 25; Young v. King, 33 Ib., 745; Fletcher v. Menkin, 37 Ib., 206, 215; Busch v. Hagenrich, 10 Neb., 415; Plow Co. v. Merois, 10 Ib., 317, 320; Short v. Stutsman, 81 Ind., 115, seq.; Hayman v. McBurney, 66 Ala., 511, 512, seq.* See also *Mansf. Dig., sec. 1310.*

But it is said that we have no right to object to defects that are mere irregularities, and it is said here mere irregularities are noted, and illustrations are attempted. Generally the question has been considered without reference to authorization, under some rule of practice created by a court, upon a theory not always consistently adhered to. It is doubtless true that mere irregularities are not objectionable, but substantial defects certainly are, as to a defendant, and more so as to an attaching creditor. Contrast *Kinney v. Heald, 17 Ark., 397,* with *Hellman*

Sannoner v. Jacobson & Co.

*v. Fowler, 24 Ib., 235.* And see *Jacobs v. Hogan, 85 N. Y., 243; Steuben v. Alberger, 78 N. Y., 252; Ferguson v. Gilbert, 17 S. C., 26; Smith v. Goettinger, 3 Kelley (Ga.) 140; Swift v. Crocker, infra; Baird v. Williams, infra; Carter v. Gregory, infra.*

What is done by an intervention now is simply to give that creditor the right to attached goods who has complied with the law, there not being sufficient for all. See *2 Disney, 505.* That he does not occupy the same position as the defendant is manifest, when we reflect that a defendant is often estopped when a creditor would not be. *Tuffts v. Manlove, 14 Cal., 51.*

The defects complained of were collusion, fictitious claim, no complaint, no affidavit, and alteration of affidavit and order after service, and we asked that we be preferred in the distribution of the fund on this account. The court held there was no complaint or affidavit, not necessarily because of matters now on the face of the record; as already said, it might have been swayed thereto, and doubtless was, by the other points made which were not abandoned. Upon the whole it held that there was no complaint nor such an affidavit as is contemplated by law. Unsoundness or insufficiency of the reasons assigned by the court below for its decision is not ground of reversal. *McClung v. Silliman, 6 Wheat., p. 603; U. S. v. Buford, 3 Pet., pp. 31, 32; Silsby v. Foote, 14 How., 219.*

There being no complaint, and the affidavit being made on belief only, the attachment was void as to appellee. Review authorities cited by appellant, and cite *Drake Att., ch. 11; Waples Att., p. 70, 77, etc.; 110 U. S., 287; 8 Pick., 165; Drake Att., secs. 276, 282, 284, 287; Waples Att., p. 70–7–8; 85 N. Y., 244; 78 N. Y., 252; 3 Metc. (Mass.) 44; 2 Pick., 241; 19 Id., 381; 35 Ohio St., 661; 17 S. C., 26; 21 Cal., 280; 3 Kelley (Ga.) 140; 78 Ky., 377.*

That there was no affidavit in attachment is plain. *24 Ark., 235; 17 Ohio St., 648; 23 Id., 192; Waples Att., 93.*

Appellant cannot amend here at our expense.    He did not ask to do so below.    *Mansf. Dig., sec. 1310.*   Nor can he do so as against our rights.    *Drake, sec. 113; Waples, pp. 105, 107, 491, 492; 2 Duv., 288; 15 Wis., 61; 2 Disney (Ohio) 505.*

The federal courts have taken a liberal stand, but that is under a process of amendment peculiar· to them.    *22 Fed. Rep., 61.*

Cockrill, C. J.    These cases are submitted together.    It is conceded they are alike, and that the decision of one will control all.    The appeals grew out of contests between attaching creditors of a common debtor, for priority of attachment liens.    J. Jacobson & Co. were indebted to each of the appellants, and, acting through the same attorney, these creditors severally sued out attachments and caused them to be levied simultaneously upon the property of Jacobson & Co.

The proceedings in each case being similar to those in Sannoner's action, it will be sufficient to consider his case alone. The only attempt at a complaint or affidavit filed by him is the following :

### "IN PERRY CIRCUIT COURT.

" J. H. Sannoner, Plaintiff,

v. ·                         *Affidavit for Attachment.*

" J. Jacobson and D. Herstein, Partners under the firm name and style of Jacobson & Herstein and J. Jacobson & Co.

"  The plaintiff, J. H. Sannoner, states and avers that the defendants, J. Jacobson and D. Herstein, are indebted to him for money advanced to them to carry on their business; that said claim is just, and plaintiff believes he ought to recover thereon the sum of two thousand five hundred· and twenty-eight and 12-100th dollars; that the defendants, J. Jacobson and D. Herstein, have sold and disposed of their property and are selling and disposing of their property, with the fraudulent

intent to cheat, hinder and delay their creditors; and affiant therefore prays an attachment against their property.

"HENRY, *for Plaintiff.*

"Eugene B. Henry avers that the plaintiff, J. H. Sannoner, is now absent from Perry county; that he is the attorney of said J. H. Sannoner, and he verily believes the facts set forth in the foregoing affidavit to be true.        EUGENE B. HENRY.

"Sworn to before me, this 31st day of December, 1884.

"J. A. McBATH, Clerk."

An attachment bond, in regular form, was filed, and thereupon an order of attachment and summons in one writ was issued. The defendants were personally served with process, and their stock of merchandise was seized and held by the sheriff under the writs. Then upon the application of Sannoner and his co-attachers, an order was made for the sale of the attached property. Before there was any attempt to distribute the proceeds of sale, H. Aronson intervened, and filed a complaint setting up that he had an attachment against the defendants, subsequent to that of the plaintiff, and levied upon the same property, and asked that the plaintiff's attachment be discharged, because: 1. No complaint had been filed before the issue of the attachment. 2. No proper affidavit for attachment had been filed. 3. Plaintiff's attachment had been issued upon fictitious claims and in collusion with the defendants, with the intent of defeating the intervenor's claim. Similar interventions were made by Berry, Jack & Co., and Menken Bros.

No attempt appears to have been made to sustain the last ground alleged in the complaint, but the court found from an inspection of the record, as the judgment entry recites, that no complaint having been filed, nor a sufficient affidavit made, before the order of attachment issued, the plaintiff had no action pending; and his attachment was accordingly discharged, and the fund arising from the sale was ordered to be distributed among the second attachers. The court also refused to enter-

tain a motion for judgment *in personam* against the defendants, upon the theory that the plaintiff had no standing in court and was entitled to no relief, and the proceeding was dismissed. From this judgment an appeal was prayed.

1. Intervening by second attacher.

The effort of the subsequent attaching creditors to contest the validity of the appellant's attachments is based upon the following provisions of the statute :

"Any person may, before the sale of any attached property, or before the payment to the plaintiff of the proceeds thereof, . . . . . present his complaint, verified by oath, to the court, disputing the validity of the attachment, or stating a claim to the property, or an interest in or a lien on it under any other attachment or otherwise, and setting forth the facts on which such claim is founded, and his claim shall be investigated." *Sec. 356, Mansf. Dig.*

" The court may hear the proof, or may order a reference to a commissioner, or may impanel a jury to inquire into the facts. If it is found that the claimant has a title to, or a lien on, or any interest in, such property, the court shall make such order as may be necessary to protect his rights. The costs of this proceeding shall be paid by either party, at the discretion of the court." *Ib., Sec. 358.*

The mode of procedure to be pursued by one claiming a lien or interest which does not give the right of possession is not definitely pointed out by the statute. One who claims title to attached property is permitted to intervene in the first attachment suit and there contest his rights with the plaintiff in that proceeding. *Mansf. Dig., sec. 390 et seq.; Neal v. Newland, 4 Ark., 459; Hershy v. Clarksville Ins. Co., 15 Ark., 128; Bloom v. McGehee, 38 Ib., 329.* As no distinction is made in the matter of procedure, in the provisions quoted, whether the claimant asserts title to the attached property, or only an interest by way of a subsequent attachment lien, the right of the second attacher to intervene and become a party to the first

proceeding, follows. The intervening suit is a separate and distinct one, however, and the issues are made between the plaintiffs in the two attachment suits without regard to the common defendant. *Cases supra.* It is nevertheless a proceeding in the cause in which the disputed attachment is made, and follows it when transferred to this court by appeal from the final judgment in the case, just as the action of the court on the motion of the defendant to dissolve an attachment does. *Holliday v. Cohen, 34 Ark., 718; Baird v. Williams, 19 Pick., 381.*

The object of letting the second attacher into the suit of the first is declared, in *Section 358, supra,* to be to enable him to procure "such order as may be necessary to protect his rights." No new right is conferred upon him by the statute, but only a privilege granted of availing himself of the new and expeditious *remedy* provided for the protection of whatever right he may have acquired by suing out his attachment. It cannot with propriety be contended that the intervenor is let in for the purpose of defending the suit and disputing the grounds of attachment in lieu of the defendant, although that might be an efficacious method of invalidating the attachment. That would involve the practice in manifold difficulties, and even in legal absurdities, without any nearer approach to substantial justice. Such a practice prevailed at an early day in Massachusetts under a statute expressly conferring upon the intervenor the right to defend for the defendant, whether the latter desired it or not, but it was abolished a long time ago, after condemnation by the courts in severe terms. *Baird v. Williams, 19 Pick., supra.* The intention to entail like evils upon our practice cannot be found in any of the provisions of the statute, and it would require a clearly expressed intention to induce us to conclude that such was the legislative design.

An examination of the authorities shows that it is an almost universal rule where the statutes permit a second attacher to

intervene in the suit of the first, to confine the scope of his inquiry to such matters as might be inquired into in a collateral attack upon the attachment proceedings in the same or a different court. The intervenor is treated as a stranger to the attachment proceeding, as much so as though he had gone into a court of equity to attack the proceeding upon some established equitable principle. *Darby v. Shannon, 19 S. C., 531.*

It is only a matter of convenience that he is let into the suit of the first attacher. As Mr. Freeman appropriately says : "Every litigant, if an adult, is presumed to understand his own interests and to be fully competent to protect them in the courts. He has the right to waive all irregularities in proceedings by which he is affected, and is entitled to exclusively decide upon the propriety of such waiver. To allow disinterested third persons to interpose in his behalf and to undertake the management of his business, according to their judgment, would create intolerable confusion and annoyance and produce no desirable result." *Freeman on Judgments, sec. 91.*

Following this general principle, the authorities, with common consent, assert that one attaching creditor, unless specially authorized by statute, cannot intervene in the suit of another to defeat it for irregularities in the proceedings against the attaching debtor. *Drake on Att., secs. 262, 273, et seq.; Waples on Att., pp. 486–7, and cases cited.*

But the decisions are by no means harmonious in drawing the distinction between imperfections which are irregularities or errors in procedure only, and those which render the proceedings void. The former, though erroneous and capable of avoiding the process in a proper proceeding for that purpose, may be cured by the liberality of the statute of amendments, and so by relation the proceedings may be made whole from the first. The latter render the proceedings, even after judgment, open to attack by any one whose interest is injuriously affected.

If we continue to treat the intervening attacher as a stranger to the first attacher's suit, except for the purpose of facilitating the adjudication of his rights, and treat his attack upon the proceedings as collateral, we avoid some of the difficulties that the courts have found in this class of cases.

Guided by this general rule, our inquiry is directed to the defects in the proceedings in the cases at bar.

The complaint has so important a relation to the ancillary proceeding by attachment, that the latter cannot exist without it or its equivalent. Properly, the affidavit for attachment should be distinct from the complaint. The statute contemplates it, and, as the issues in the main suit and upon the attachment may be determined in separate trials, orderly proceeding and good pleading demand it. But if either the affidavit or the complaint contains all the essentials of both, to refuse to permit one to perform a double function and serve the purpose of both, would be to look more to form than to the ends of justice. It has accordingly been ruled by this court, that in a proceeding before a justice of the peace, where an affidavit is required as in the circuit court, and also a written statement of the account sued on in lieu of the complaint, that an affidavit which contained a statement of the account dispensed with the necessity of filing a separate statement, and answered the double purpose of affidavit and complaint. *Tignor v. Bradley, 32 Ark., 781; Kurtz v. Dunn, 36 Id., 648; Allen v. Brown, 4 Metc., 347; Scott v. Doneghy, 17 B. Mon., 324.*

In the case under consideration, the paper filed and called an affidavit for attachment, gives the style of the court; entitles the case as in ordinary actions, giving the names of the parties plaintiff and defendant; the relation under which defendants are sued; the character of the indebtedness and the amount, and is sworn to. The allegation of the complaint as to the amount of the debt sued for is not positive and direct, as it should be, but no one will contend that the defect could

2. Complaint and affidavit.

Sannoner v. Jacobson & Co.

**3. Complaint omitting prayer for judgment.** not be cured by amendment at any time. The affidavit may be treated then as containing everything necessary to a perfect complaint except a prayer for judgment. The question then is narrowed to this: Is the omission of the prayer for judgment so grave a matter as to be fatal to the action? If it is not fatal to the action the intervenor cannot be heard to complain. The statute declares that " the court *must*, in every stage of action, disregard any error or defect in the proceedings, which does not affect the substantial rights of the adverse party." *Ib., 5083.*

In a suit upon account for money advanced, like the one under consideration, the only relief to which the plaintiff can be entitled is at once apparent from the allegations of the complaint, and the omission of the demand for judgment cannot be said to affect the substantial right of any adversary. A party is entitled to the relief which the facts shown clearly warrant, whether he has prayed much or little. *Pomeroy's Rem., sec. 580; Newman Pl. & Pr., 664; 1 Estes Pl. & Pr., 252; Louisville Ry. v. Smith, 58 Ind., 575; Acker v. McCulloch, 50 Ib., 447; Jones v. Butler, 20 How Pr., 191; Tuolumne Water Co. v. Columbia Water Co., 10 Cal., 193.*

It was then only a question of the regularity of proceeding, whether the complaint and affidavit were embodied in one paper, and whether the complaint was itself sufficient in form; but these matters did not concern the second attacher. If the defendant chose to waive the objection in favor of the first creditor, he could do so without giving any cause of complaint to his other creditors. *Drake Att., secs. 90a, 262, 273; Waples Ib., 486–7, and numerous cases cited.*

**4. Affidavit on belief insufficient.** But the affidavit for attachment is made upon belief only, and this presents a more serious question. It was ruled by this court in *Hellman v. Fowler, 24 Ark., 235,* that the grounds for attachment laid down by the statute are not the belief of facts but facts themselves, and an attachment sued out upon an affidavit upon

belief alone was quashed in that case. The statute in that respect has not been changed and the rule is consequently unaltered. If the affidavit is not positive the attachment may be quashed, but the question in this case is, does the defect avoid the writ or is it an irregularity merely? If the former, the second attacher can have the benefit of it; if the latter, it concerns the defendant alone, and the intervenor cannot raise the question for him. It has been frequently held that the omission of any statutory prerequisite in suing out an attachment renders the process void, and subjects the judgment that follows it to a successful collateral attack. *Waples Att., p. 321, and cases cited.* We are cited to the case of *Steuben Co. Bank v. Alberger, 78 N. Y., 252,* as authority for holding that attachment proceedings, based upon an affidavit which states the ground of attachment upon belief only, are in this category, and consequently open to the assault of a second attacher. The case sustains the position, but so long as the statutes permit the amendment of the affidavit for attachment, and the previous decisions of this court construing them as broad enough to cover a defect by relation that would otherwise be fatal, are adhered to, this and analogous cases cannot be regarded as authority by us. The strict construction that is applied to the remedy by attachment in these cases, and in many to be found in the early decisions of this court, is, as the court say in *Childress v. Fowler, 9 Ark., 163-4,* "in furtherance of the views of the legislature in placing unusual restraints upon its use." The intention of the legislature to make void a proceeding not in conformity to the statute for any reason, being ascertained, the courts of course declare the law so to be; but when a different intention is apparent the courts again follow the legislative will. In most of the cases cited by counsel where substantial defects in the affidavit have been ruled to render the process void, the affidavit is said to be jurisdictional, and the defect consequently fatal. But it cannot be understood that such is the meaning of our legislation on this subject, for otherwise, as

was said by Justice Matthews in *Erstein v. Rothschild, 22 Fed. Rep., 61*, in delivering the opinion of the court in an attachment case, the affidavit would not have been made capable of amendment, and the defect cured by relation to its date. If the attachment was a nullity, no jurisdiction could be acquired under it by subsequent amendment. The amendment would merely make a case which would authorize proceedings to acquire jurisdiction. It could not quicken that which was without legal validity. *Pope v. Hibernia Ins. Co., 24 Ohio St., 481.* No amendment could aid a void affidavit, and it could not therefore be allowed. *Allen v. Brown, 4 Metc. (Ky.), 346.* "The very fact that the court can make the amendment shows, *ex vi termini*, that the proceedings are merely erroneous or irregular, and that the court has jurisdiction." *Hardin v. Lee, 51 Mo., 241; Moore v. Mauck, 79 Ill., 391; Toland v. Sprague, 12 Pet., 329–30.*

Now the statutes of amendments in this state apply as well to attachment proceedings as to proceedings in an ordinary action. The case of *Rogers v. Cooper, 33 Ark., 406*, is the leading case on this subject, and carries the rule farther than it is necessary to go in this case. There an attachment was issued by a justice of the peace, upon an affidavit which stated none of the grounds for attachment prescribed by the statute. Upon a motion to quash the attachment by the defendant the justice allowed the plaintiff to amend his affidavit, but the amendment made did not in fact perfect the affidavit. The attachment, however, was sustained by the justice, and the defendant appealed to the circuit court and there renewed his motion to quash the attachment, among other grounds, because of the insufficiency of the affidavit. The court refused to permit the plaintiff to amend, and quashed the attachment; but upon appeal to this court it was ruled, after a review of the statute in question, that the right of amendment existed and that the circuit court erred in refusing to permit it. It is apparent from

the ruling in the case that the validity of the attachment did not date from the time of the amendment only, because the circuit court acquired no jurisdiction except by appeal and could try no case save such as the justice had jurisdiction of prior to the appeal. The case has been since approved and followed from time to time. *Nolen v. Royston, 36 Ark., 565; Fletcher v. Menken, 37 Id., 206; Sherill v. Bunch, Ib. 560.*

The same rule prevails in Kentucky, where the provisions of the statute as to amendments are similar to our own, and it is there expressly ruled that the statute does not make jurisdiction in attachment depend upon the affidavit filed with the clerk, and irregularities in the affidavit are held to be mere errors in procedure. *Allen v. Brown, supra; Bailey v. Beadles, 7 Bush., 383.*

This is the rule followed also in the federal courts. *Erstein v. Rothschild, supra; Matthews v. Densmore, 109 U. S., 216.* In *Tilton v. Cofield, 93 U. S., 163,* the supreme court of the United States say: "Allowing amendments is incidental to the exercise of all judicial power, and is indispensable to the ends of justice. Usually, to permit or refuse rests in the discretion of the court. . . . It has been held, upon full consideration, that the courts have the power to amend their process and records notwithstanding such amendment may affect existing rights. Where no local statute or rule of local law is involved, the power to amend is the same in attachment suits as in others. Cases of this kind, too numerous to be cited, may be found, in which amendments in the most important particulars were permitted to be made."

We are aware that in Kentucky the right to amend has been denied as against a second attacher, (*Bell v. Hall, 2 Duval, 288,*) but we are unable to reconcile this ruling with the principle that a stranger to a judicial proceeding can take no benefit from mere irregularities committed in procedure in a court having jurisdiction of the person of the defendant and the sub-

ject matter in dispute, as the circuit court has in attachment by service of process upon the defendant and the seizure of the attached property under the writ. *Hershy v. Clarksville Ins. Co., supra; Matthews v. Densmore, 109 U. S., 216.*

We fail to perceive that the second attacher has rights which are entitled to protection in preference to those of the first. He has not been misled into taking any steps to his prejudice or otherwise by the prior proceeding, for he must be presumed to act with the knowledge that the courts can, and in cases deemed proper by them will, amend their records so as to promote the ends of justice. *Green v. Cole, 13 Ired., 425; Tilton v. Cofield, supra.*

To prevent the sacrifice of substance for the sake of form is the design of the statutes of amendments. To give preference to one who has been dilatory in the race of diligence and whose position, in the absence of fraud or collusion between the debtor and the first attacher, is no more favorable as against the more diligent creditor than that of the debtor himself, would not tend to promote the aim of these statutes.

The case of *Lowenstein v. Monroe, 52 Iowa, 231*, is one in which the verification of the grounds of attachment having been made upon belief only, was amended, against the protest of an intervenor; and this, by the vast preponderance of authority, is the rule whenever any defect complained of is regarded as an irregularity merely.

It is further urged that no offer to amend was made in the circuit court. A complete answer to this objection is that the court dissolved the attachment prematurely at the instance of a stranger who had no right to raise objection, and refused to hear the plaintiff for any purpose, upon the ground that he had never obtained a foothold in court.

The plaintiffs should have embraced the earliest opportunity to correct the gross improprieties in practice that the haste of

suing out the attachment had doubtless caused them to fall into, upon such terms as the court might have seen fit to impose without waiting to be moved to do so, but the neglect to do this was not fatal to their right to amend.

It is unfortunate that courts of record should be called upon at any time to sanction proceedings had upon the loose and disorderly pleadings that these records disclose, but as "the substantial rights of the parties" is the object to be attained by courts, rather than orderly proceedings, the plaintiffs should be afforded the opportunity of presenting their causes to the consideration of the court, and the judgments must be reversed and the cases remanded for further proceedings.