## DAVIS *v*. H. B. CLAFLIN COMPANY.

### Opinion delivered November 7, 1896.

INSOLVENT CORPORATIONS—PREFERENCES.—The act of April 4, 1893, to prevent preferences among the creditors of insolvent corporations, has no application to an attachment against an insolvent corporation levied before the act took effect.

ATTACHMENT—DEBT NOT DUE—INTERVENTION.—The suing out by a creditor of an attachment upon a debt not due, upon the allegation that the debtor had disposed of its property with fraudulent intent to hinder and delay its creditors when such allegation is false, and there is no ground for the attachment, is such a violation of the law as amounts to a constructive fraud upon junior attaching creditors, who may intervene for the purpose of having such prior attachment subordinated to their liens.

Appeal from Sebastian Circuit Court in Chancery, Fort Smith District.

EDGAR E. BRYANT, Judge.

#### STATEMENT BY THE COURT.

H. B. Claflin Company brought suit against the Holmes Dry Goods Company, of Fort Smith, in this state, for $28,333.34, for which amount H. B. Claflin Company held the promissory notes, eight in number, of the Holmes Dry Goods Company, which had been transferred to it in due course of trade, before maturity, by one Daughaday.

H. B. Claflin Company sued out an attachment in said suit, and had it levied upon the stock of goods of the Holmes Dry Goods Company, at Fort Smith, Ark.; alleging in its affidavit for attachment that the Holmes Dry Goods Company was a non-resident of the state, and that it had fraudulently disposed of its property with the fraudulent intent to hinder and delay its creditors. This affidavit was made by Leo Frank, the agent of H. B. Claflin Company.

Subsequently the appellants, as interveners, brought suits on their demands against the Holmes Dry Goods Company, sued out attachments, and had them levied upon the same stock of goods. Immediately before H. B. Claflin Company had their attachment levied, the American National Bank of Fort Smith had brought suit, and had an attachment against the Holmes Dry Goods Company, which was levied prior to either of the other attachments. Judgment went against the Holmes Dry Goods Company in all the suits, the attachments all having been sustained.

The stock of goods of the Holmes Dry Goods Company was sold by the sheriff, under order of the court, and he held the proceeds when appellants intervened, and upon their intervention the cause was transferred to equity. The interveners claim that H. B. Claflin Company ought to be postponed to them in the distribution of the proceeds of the sale of the stock of goods of the Holmes Dry Goods Company,—not however contesting the right of the bank to precedence. The interveners charge that the notes upon which H. B. Claflin Company's suit is based do not represent *bona fide* debts owing by the Holmes Dry Goods Company to it, and say that they are "collusive, simulated, and fraudulent, and were contrived, executed, delivered, and received by the plaintiff and the managing officers and agents of the defendant for the purpose of hindering, delaying, and defrauding the *bona fide* creditors of defendant; that the said notes were never legally executed by defendant." The interveners in their petition allege also that, at the time the plaintiff's attachment was issued, no grounds for said attachment existed, and said suit, with others, was brought with the assent, connivance and procurement of the defendant's managing officers, and with the knowledge on the part of the plaintiff that no ground for attachment existed; that the attachment of plaintiff was not sued out in good faith,

adversely, but in the furtherance of a conspiracy between plaintiff and the managing officers and agents of defendant to apply the assets of the defendant to the payment of the simulated and fictitious debts of plaintiff, etc. There are other matters alleged in the petition of the interveners, which the court finds it unnecessary to mention, in the view it takes of the case. They concluded with a prayer, that the plaintiff, H. B. Claflin Company, be postponed to the liens of the petitioners under their attachment, etc.; and, by way of amendment to their petition, made by leave of court, the interveners "allege that, on the 8th of December, 1892, the Holmes Dry Goods Company was an insolvent company; that the attachment herein was sued out by H. B. Claflin Company, and judgment obtained, for the purpose of obtaining preference, in violation of the act of the general assembly, approved April 14, 1893, entitled 'An act to prevent preference among the creditors of insolvent corporations,' and the interveners thereupon pray that if it be found that H. B. Claflin Company's debt is *bona fide*, and its attachment not fraudulent as to petitioners, the funds in the hands of the sheriff be distributed ratably among all the creditors of the Holmes Dry Goods Company."

The appellee in its answer denies all fraud and conspiracy, and that its debts were simulated, and says they were *bona fide*, and that the debts for which the notes were given, upon which its suit is brought, were just debts; and it denies that it was party to any schemes, conspiracy, or contrivance for the purpose of hindering, delaying, and defrauding the *bona fide* creditors of the Holmes Dry Goods Company; denies that said notes were never legally executed; denies that no grounds for attachment existed when it sued out its attachment; denies that its attachment was not sued out in good faith, and that it was sued out in furtherance of a conspiracy, as charged; denies that it sued out

its attachment to obtain a preference, under the act of April 14, 1893, entitled "An act to prevent preferences among the creditors of insolvent corporations," and prayed that the interveners' petition be dismissed.

There was much testimony in the case, which it is not necessary for this court to notice.

It appeared in evidence, and from the pleadings and exhibits in the cause, which was transferred to equity, that the Holmes Dry Goods Company made no defense in the suit by H. B. Claflin Company against it, and it also appeared from the notes sued upon by H. B. Claflin Company in the suit against the Holmes Dry Goods Company, and by the testimony of their agent, Leo Frank, who filed the affidavit for their attachment, that seven of the eight notes sued upon were not due when they had their attachment issued.

The court decreed for H. B. Claflin Company, and dismissed interveners' petition, from which decree they appealed to this court.

*Geo. H. Sanders*, for appellants.

1. In *Sannoner* v. *Jacobson*, 47 Ark. 31, as also in the cases from South Carolina, Missouri and Massachusetts, the ruling is that an intervener is prohibited from interfering in a case where there is an irregularity or informality in the proceedings which could have been amended, and thus made whole; but that in all other cases where there is or was a radical defect in the cause of action, as where no ground of attachment existed, or any other defect that showed there was no authority for maintaining the action, then the intervention is admitted to show this defect, and, upon proof of the fact, the prior attachment is postponed to the clear right of the subsequent attachment. Sand. & H. Dig. secs. 377, 372; 47 Ark. 38; 4 N. H. 319; 2 Bailey, 209; 3 McCord, 201; *ib.* 345; 35 Ohio St. 664; 9 Mo. 397; 57 Ark. 541;

Mans. Dig. secs. 356, 358; 53 Ark. 140; Waples, Att. sec. 775 (Ed. of 1895); Drake, Att. sec. 274; Wade, Att. sec. 54; Van Vleet, Col. Attack, p. 583; 93 Ky. 270; 44 La. An. 843; 65 Tex. 266; 62 *id.* 328; 4 Rich. S. C. 561; 14 N. H. 129; 13 Cal. 435; 18 *id.* 378; 36 Ind. 361; 85 N. Y. 243; 3 Mich. 531.

2. A preference of a creditor cannot be made by attachment without grounds, where other creditors follow with grounds, and writs are levied on the same property. Burrill, Assignments, sec. 125; Pom. Eq. Jur. sec. 886.

3. The debt sued on in this case was not *bona fide*, and not such as would support an attachment against third parties holding *bona fide* debts against the party attached. Cook on Corp. sec. 716, and notes; Dan. Neg. Inst. sec. 393; 146 U. S. 705; 55 Fed. 471; 120 N. Y. 145.

*Clendenning, Mechem & Youmans* and *Jos. M. Hill* also for appellants.

An attachment known to both debtor and creditor to be without grounds, and resorted to, in pursuance of an agreement between them as a method of giving a preference, should be postponed at the instance of a prior attaching creditor. 47 Ark. 31; 58 *id.* 524; 60 *id.* 444; 53 *id.* 140; 57 *id.* 545; 12 S. W. Rep. 235; 18 *id.* 1019. There are two grounds of attachment in this case: (1) That defendant was a non-resident, and (2) that it had fraudulently disposed of its property, etc. The *first* ground is applicable only to *due* debts. Sand. & H. Dig. secs. 325, 327. Six of the notes, aggregating $20,000, *were not due*, and this amount must depend on the second ground of the attachment, that the Holmes company had fraudulently disposed of its property, etc. This ground is shown to be false, and the attachments fail. 12 S. W. Rep. 508. There was a clear abuse of

the court's process—a fraud on the court and junior attachers in good faith.

*Morris M. Cohn* for appellee, *Clayton & Brizzolara* of counsel.

1.   In Arkansas it is settled that interveners cannot contest the ground of the attachment, whether they are denied or confessed by the defendant in the attachment. 47 Ark. 31, 41–2; 71 Fed. 151; 2 So. 168; 69 Wis. 434; 34 N. W. 229; Drake, Att. (6 Ed.) secs. 280, 281.

2.   The statute expressly authorizes an attachment for debts *not due.* And if a judgment was taken thereon, it was a matter for the Holmes Dry Goods Company to set up, not a matter of which the interveners could complain. Cases *supra.* and Freeman, Judgments, sec. 337; 76 Ind. 78; 102 Pa. St. 536; 16 *id.* 18; 22 Atl. 90; 10 Pet. 449; 141 U. S. 260; 71 Fed. 591–5.

3.   If, as has been held, the failure to give bond or make the affidavit is immaterial, surely the fact that the affidavit was based on no sufficient grounds would be immaterial, on collateral attack.   3 Pet. 193, 207; 131 U. S. 352; 150 *id.* 371, 380; 152 *id.* 327, 329; 156 *id.* 527, 533.   After appearance by defendant and plea, it is too late to take advantage of preliminary defects.   Drake, Att. sec. 112.   The absence of bond, or affidavit, does not impair the right of the attaching creditor on collateral attack by an intervener.   60 Ark. 444; 10 Wall. 308; Drake, Att. (6 Ed.) secs. 273, 112.   A corporation may be guilty of acts against public policy, yet the objection only lies at the instance of the government.   98 U. S. 621–8; 112 *id.* 405, 413; 107 *id.* 174, 188; 47 Ark. 270, 281; 5 Atl. 751, and note; 8 N. E. 159.

4.   The notes were not void.   104 Mo. 531, 539; 86 Mo. 125, 139; *Estes* v. *German Bank,* 62 Ark. 7; *City Electric Street Ry. Co.* v. *Bank,* 62 Ark. 33.   But the H. B. Claflin

Company was a *bona fide* holder for value before maturity. 48 Ark. 460; 42 *id*. 22; 53 *id*. 537, 542-3; 102 U. S. 25; Tiedeman, Com. Pap. secs. 35, 115, 116, 117; Dan. Neg. Inst. secs. 386, 389, 390; Taylor on Corp. sec. 204. Possession by payee is *prima facie* evidence of title, and a purchaser may safely rely on it without injury. 42 Ark. 22; 23 N. E. 727; 23 Pac. 509; Tiedeman, Com. Pap. sec. 116. Outside creditors cannot raise the question of *ultra vires;* that is solely the right of the corporation, which it may waive. 51 Fed. 1; 105 U. S. 173; 107 *id*. 174, 188; 16 Iowa, 293, *et seq*.

HUGHES, J., (after stating the facts.) Are the interveners entitled to the relief they ask, that is, that H. B. Claflin Company be postponed to them in the distribution of the balance of funds, proceeds of the sale of the goods of the Holmes Dry Goods Company in the hands of the sheriff? Can they be heard to complain, inasmuch as the Holmes Dry Goods Company made no defense, and does not complain?

At the time of the execution of the notes, which are the basis of the suit of H. B. Claflin Company v. Holmes Dry Goods Company, and the date of the institution of this suit, and the issuance of the attachment in favor of the appellees, preferences among creditors by insolvent debtors were allowed in this state.

This court decided, in *Glaser* v. *First National Bank*, 62 Ark. 171, that when two creditors have sued out attachments, and cause them to be levied on the same property, the junior attacher has no right to file a complaint in the action instituted by the senior attacher, and have the senior attachment set aside, by showing that it was known at the commencement thereof by both parties to the same to be without legal grounds, that it was based on an affidavit known to be false by both parties to the action in which it was filed, that it was made for the purpose of obtaining a preference over creditors,

and that it was permitted by the debtor for that purpose, he and the first attaching creditor - knowing at the time that he was in failing circumstances; that section 372, Sand. & H. Dig., providing that any person may before sale of the attached property present his complaint to the court disputing the validity of the attachment and setting up some claim to the attached property, and his claim shall be investigated, gives no such right. We adhere to this.

As is said in that case, and the cases generally involving this question, "no creditor has the right to defend an action or proceeding against his debtor, to which he is not a party. * * * A junior attaching creditor cannot take advantage of irregularities or informalities in the proceedings in a prior attachment, though constituting good grounds to set aside the attachment on the motion of the defendant. * * * Priority is in the gift of the debtor." If he is content, no one else can complain of mere irregularities or informalities. "The formality and regularity of such proceedings, * * * in the absence of fraud and collusion between the plaintiffs and defendants, are matters pertaining exclusively to the defendants."

In the case of *Glaser* v. *First National Bank*, there was no showing or contention that the debts for which attachments were issued were not due when suit was brought, and when the attachments were issued.

The weight of judicial determination seems to be that subsequent attaching creditors, whose attachments' are sustained, and who obtain judgments upon their claims, ought to have relief against attachments based on demands not yet due, where there is no statute allowing attachments for debts not due. *Ward* v. *Howard*, 12 Ohio St. 158; *Seibert* v. *Switzer*, 35 Ohio St. 661; *Nenney* v. *Schluter*, 62 Tex. 327; *McCluny* v. *Jackson*, 6 Gratt. 96; *Fairfield* v. *Baldwin*, 12 Pick. 388; *Pierce* v.

*Jackson*, 6 Mass. 242; *Henderson* v. *Thornton*, 37 Miss.
448; *Taaffe* v. *Johnson*, 7 Cal. 352; *Ayres* v. *Husted*, 15
Conn. 504; *Patrick* v. *Montader*, 13 Cal. 434; *Davis* v.
*Eppinger*, 18 Cal. 378; *Walker* v. *Roberts*, 4 Rich. Law.
561; *Palmer* v. *Martindell*, 43 N. J. Eq. 90 (10 Atl. 802);
Drake, Attachments, secs. 273-275; *Peirce* v. *Partridge*,
3 Met. 49; *Hale* v. *Chandler*, 3 Mich. 531. "And in
California, Indiana, Mississippi, and Michigan, where
an attachment could not be had upon a demand not due,
the issue of an attachment to secure such debt was a
fraud upon junior attaching creditors, for which they
could have the prior attachment dismissed." Shinn,
Attachments, note 1 to section 411, p. 760, and authorities
cited. See also *Fairfield* v. *Baldwin*, 12 Pick. 388;
*Pierce* v. *Jackson*, 6 Mass. 242; *Kollette* v. *Seibel*, (Tex.
Civ. App.) 26 S. W. 863; *Bateman* v. *Ramsey*, 74 Tex.
589, S. C. 12 S. W. 238.

The act of April 14, 1893, entitled "An act to pre- <span style="font-variant:small-caps">Construction of act prohibiting preferences.</span>
vent preferences among the creditors of insolvent corpo-
rations," has no application to this case, as the attach-
ments in this case were levied before the passage of
said act.

Section 377 of Mansfield's Digest provides: "In an <span style="font-variant:small-caps">Validity of attachment on debt not due.</span>
action brought by a creditor against his debtor, the
plaintiff may, before his claim is due, have an attach-
ment against the property of the debtor where: First.
He has sold, conveyed, or otherwise disposed of his
property, or suffered or permitted it to be sold, with the
fraudulent intent to cheat or defraud his creditors, or to
hinder or delay them in the collection of their debts."

The affidavit of Leo Frank, as agent of H. B. Claflin
Company, upon which their attachment was issued,
states, "that the defendant is a non-resident of the State
of Arkansas, and that it has fraudulently disposed of its
property, with the fraudulent intent to hinder and delay
its creditors."

It appears from the evidence in the case that there was no ground for the attachment of appellee. Had the Holmes Dry Goods Company interposed a defense, and made this proof, the attachment would doubtless have been discharged, and judgment would have gone against H. B. Claflin Company as to the debts not due when the suit was brought and the attachment by H. B. Claflin Company was issued. *Cox* v. *Dawson*, 2 Wash. 381 (26 Pac. Rep. 973).

Where the statute provides for suit upon a debt not due, upon the ground that the defendant has fraudulently disposed of his property with the fraudulent intent to hinder or delay his creditors (upon which ground alone an attachment upon a debt not due is allowed by statute in this state), can junior attaching creditors intervene and show by proof that there was no ground for the attachment, and have the senior attachment postponed to their lien?

Perhaps most of the cases maintaining the right of junior attaching creditors, upon their intervention, to have a senior attachment lien postponed, when the senior attachment is issued upon a debt not due, have been determined in states where there is no statute authorizing attachments for a debt not due. Most of the cases base the right upon the ground of constructive fraud by the junior attaching creditor in obtaining an attachment upon a debt not due, when he has no ground for it, and the attempting to secure a prior lien and preference, when he is not entitled to it. Some say only that the prior attachment in such case is void, and seem to place it upon the ground that the prior attachment at the time it is issued is not authorized by law.

We think that, upon reason and authority, an attachment issued upon a debt not due may be avoided by a junior attaching creditor, and postponed to his

attachment lien, where there is no statute authorizing the issuance of an attachment for a debt not due; and it seems that there ought to be no difference where the statute authorizes the attachment for a debt not due, upon particular circumstances or conditions which are alleged as grounds for the attachment, but which, in fact, are shown to be false. It is only where such circumstances or conditions exist that an attachment is allowed by law. If it be true that an attachment issued upon a debt not due can be avoided or postponed at the instance of a *bona fide* attaching creditor, it is not important, in the opinion of some members of the court, whether we say that the reason why it can be done is because the senior attachment is void, as against the junior, because it is not authorized by law, or because it is constructively or legally fraudulent. The same end is reached, by whatever name we give the means by which it is reached.

But a majority of the court are of the opinion that the suing out of their attachment by the appellee, H. B. Claflin Company, upon the ground that the Holmes Dry Goods Company had fraudulently disposed of its property with the fraudulent intent to hinder and delay its creditors, when there was proof that such allegation was in fact false, and that there was no ground for the attachment, was such a violation of law as amounted to a constructive fraud, as against the junior attaching creditors, and would, if permitted to stand, give the appellees an unfair, inequitable, and unjust advantage over such interveners, to which they are not entitled.

By reason of such fraud the appellee must be postponed, as to all its debts not due when its attachment was sued out, to the interveners, in the distribution of the proceeds of the attached property in the hands of the sheriff, and it is so ordered.

The decree is reversed, and the cause is remanded, with directions to enter a decree for the appellants, and for futher proceedings not inconsistent with this opinion.

BUNN, C. J., (concurring.) It was held by this court in *Sannoner* v. *Jacobson*, 47 Ark. 31, and in *Glaser* v. *First National Bank*, 62 Ark. 171, that a junior attaching creditor cannot controvert the grounds of an attachment of a senior attaching creditor. Upon the doctrine thus announced in these two cases especially, and many cases doubtless decided in other jurisdictions, appellees base their contention in the case at bar mainly, that is to say, since the defendant, the Holmes Dry Goods Company, has filed no countervailing affidavit, and otherwise made no defense, judgment on their affidavit should go as a matter of course, the same not being controverted by the defendant, and no one else being permitted to do so.

I concur in the result of the consideration of this case by the court, but not altogether in the reason of the opinion.

This is a case, so far as plaintiff's attachment is concerned, of an attachment on a debt the most of which was not due when the suit was instituted; whereas the case of *Sannoner* v. *Jacobson*, *supra*, and the latter case of *Glaser* v. *First National Bank*, *supra*, were cases where the debts were both overdue at the time of the institution of those suits respectively, or at least were so treated in the discussion of them.

One of the reasons, if not the most potent reason, why a junior attacher cannot attack the grounds of the attachment of the senior attacher, may be found in the history of our attachment laws, and the various statutes on the subject. Previous to the adoption of the code of civil procedure in 1868, we had never had any statute authorizing an attachment on a debt not due, but all our statutes on the subject of attachment were applicable

only to cases where the debts were due and suable, and upon which judgments could be rendered in the absence of such extraordinary provisions. Until the passage of an act approved March 7, 1867, which was embodied in the code of 1868, in a more perfect form, an affidavit in attachment had never been traversable, but in all cases, the plaintiff being entitled to judgments on his debt, the judgments in attachment, or rather the orders sustaining the attachments, went as a matter of course. The defendant could appear and *except* to the affidavit, which means he could show its non-compliance with the statute, or its informality. Sec. 29, ch. 17, Gould's Dig. He of course could defend by answer to declaration. *Ib.* sec. 24. But the provision of the code now in force, and digested as section 397, Sand. & H. Dig., gives the defendant the right to file his countervailing affidavit; and when he has done so, the plaintiff's affidavit in attachment is to be considered as controverted, and issue joined. But this is a privilege accorded to the defendant alone, according to the language of the statute. Without this countervailing affidavit, to be made and filed only by the defendant as stated, the procedure in respect to the attachment continues to be the same as before the statute authorizing the controversion of the grounds of attachment by the defendant, and, the debt being proved in any case, and the plaintiff being entitled to judgment thereon, the judgment in attachment follows as a matter of course. Hence the rule that a junior attacher cannot attack the grounds of the senior attachment.

This being a case of attachment before debt due, the the first question made by the contention of the parties is, whether or not the rule referred to as pertaining in cases where the debts are overdue pertains also in cases where the debts are not yet due when the suits are instituted.

Our statutory provisions governing proceedings in ordinary attachments—that is, attachments upon debts already due—manifestly contemplate a complaint and an affidavit for the order of attachment in separate instruments or papers, for the language is: "The plaintiff in a civil action may, at or after the commencement thereof, have an attachment against the property of the defendant, in the cases and upon the grounds hereinafter stated." Section 325, Sand. & H. Dig. Since the affidavit may be made by the plaintiff himself, or by some (any) one else for him, at any time after the complaint has been filed, it follows that the complaint and affidavit are separate papers in that case, and of course at least *may be* when both are filed at the same time; and moreover, while the verification of the complaint must be by the plaintiff, his attorney or agent, the affidavit in attachment may be made by any person for the plaintiff; hence the two—the complaint and the affidavit—are usually two separate papers, in the meaning of the statute. See sections 326 and 5744, 5745, Sand. & H. Dig.

I have not overlooked the fact that, in two cases at least, this court has held that an affidavit in ordinary attachment, when it contains all the essential ingredients of a complaint, may serve as both. See *Sannoner* v. *Jacobson*, 47 Ark. 31; *Lehman* v. *Lowman*, 50 Ark. 444. But while this, by the authority of those decisions, is allowable, it is, in my opinion, a rule of very doubtful propriety, because it tends to confuse things; for in such case a failure of defendant to answer would justify a judgment in attachment, while such failure might not justify or authorize a judgment on the complaint.

However that may be, or should be, no such rule is allowable in cases of attachment on debts before they are due. In these last cases, there can be no separate affidavit for the attachment, for the language of the statute is: "In an action brought by a creditor against

his debtor, the plaintiff may, before his claim is due, have an attachment against the property of the debtor, where, etc." Section 377, Sand. & H. Dig.

"The attachment authorized by the last section (377) may be granted by the court in which the action is brought, or the clerk or judge thereof, or any circuit judge in vacation, where the *complaint*, verified by oath of the plaintiff, his agent or attorney, shows any of the grounds for attachment enumerated in that section, and the nature and amount of plaintiff's claim, and when the same will become due." Section 378, Sand. & H. Dig.

Thus the grounds for attachment become, in such cases, part and parcel of the complaint, serving as so many material allegations thereof; and further, in order that the court may not be misled into rendering a judgment as if on debts due, the time when the debt will become due is an essential element or allegation in the complaint, not to be substituted by the statements contained in the exhibits to the complaint; for exhibits are generally no part of the pleadings, and are only referred to by the court to verify the pleadings.

Unless the complaint contains the statutory averments, of course judgment for a debt not due is not authorized, for the evidence of debt sued on is the note, which is not due; and since the grounds for attachment become material allegations in the complaint, before the court can pronounce judgment, these allegations, as so many essential facts, must be proved, on failure of the defendant to answer (see sec. 5863, Sand. & H. Dig.), although, if the defendant had answered, and failed to join issue on some of the allegations of the complaint, these will be taken as true, and judgment will be rendered thereon at any time after such partial answer is filed. See secs. 5761 and 5864, Sand. & H. Dig.

So it matters not then whether a junior attacher is permitted to controvert the grounds of attachment or not, the court must take the proof as to the truth of same before taking judgment by default, because these grounds are allegations of facts constituting part of the complaint or cause of action—the basis of the lien, which is always the subject of controversy.

The difference in the manner of formulating the pleadings in the case of debt due and that of one not due is significant, and I do not think can be disregarded if we would understand precisely what to do in order to obtain judgment upon our pleadings.

In those jurisdictions where there are no statutory provisions for attachment on debt not yet due, every effort knowingly made to obtain judgment in suits brought before the debts are due is necessarily fraudulent—an imposition upon the court, and therefore in fraud of the rights of adverse litigants—but in jurisdictions where such provisions are made, I do not think the institution of such suits and relying solely upon the defendant's failure to answer and judgments by default, are necessarily fraudulent, either actually or constructively. Such efforts may, however, amount to actual fraud, for they may be efforts to deceive and mislead the court. But an honest conviction that no proof of an alleged fact is necessary, unless the allegation is controverted by affidavit, as in the present case, in my opinion, is never fraudulent, but involves a right to litigate and try the question, which ought never to be denied, expressly or by implication. If one's honest theory prove false or erroneous, the consequences of failure is all the burden that ought to fall on him.

In fine, "constructive fraud" is a phrase that, I think, should have a very narrow and exceedingly circumscribed meaning.

Wood, J., (concurring.)   The attachment was incident to and dependent upon the right to sue and have judgment for the debt. *Hardware Co.* v. *Deere, Mansur & Co.*, Ark. 140; Sand. & H. Dig. sec. 325.   As to the debts not due, no such right existed.   For the complaint does not show any of the grounds of attachment for debt not due prescribed by sec. 377, Sand. & H. Dig.   Under sec. 378, *id.*, this is expressly required.   Judgment by default could not be had upon a complaint binding appellants. These are not matters of mere irregularity or informality,—matters. pertaining to the grounds of attachment, which the attachment debtor alone can question.   They go to the basis of the action itself, showing the invalidity of the attachment, and destroying the foundation of the lien. *Hardware Co.* v. *Deere, Mansur & Co.*, *supra.* As the complaint shows that the debts are not due, and neither the complaint nor the proof shows any of the conditions upon which a judgment for a debt not due can be predicated, it follows that the judgment in this case sustaining the attachment and fixing a lien in favor of appellees as against appellants (who have a judgment and a lien by attachment for debts past due), is without authority of law and void.

Riddick, J., (dissenting.)   I am of the opinion that the interveners have no right under the statute to contest the grounds of plaintiff's attachment.   It is not denied that the claim of plaintiff is based upon an honest debt. The affidavit showed cause for attachment upon a debt not due, and as this affidavit was not controverted by defendant, its allegations should be taken as true, not only against defendant, but against interveners also. *Glaser* v. *Bank*, 62 Ark. 171; *Rice* v. *Adler*, 71 Fed. 157.