## SCOTT v. VULCAN IRON WORKS CO.

No. 735.  Opinion Filed July 11, 1911.

Rehearing Denied February 20, 1912.

(122 Pac. 186.)

1.  **REPLEVIN—Complaint—Commencement of Action.** In an action in replevin in one of the United States courts of the Indian Territory, an affidavit was filed, but no separate complaint, but the affidavit contained the essentials of a complaint. **Held,** that the affidavit should be treated as both an affidavit and complaint; and that filing of same and issuance of a summons constituted the commencement of an action.

2.  **SAME—Complaint—Prayer for Judgment.** The omission from a complaint in replevin of a prayer for judgment is not a fatal defect.

3.  **COURTS —Territorial Courts — Transfer of Causes on Admission of State.** Where the taking of depositions in an action pending in one of the United States courts of the Indian Territory begun before the admission of the state was under written agreement, and was continued and completed after the admission of the state, said depositions, on being returned, were properly filed in the office of the clerk of the district court of the state to which the action has been transferred, and was pending under the provisions of the Enabling Act and Schedule to the Constitution.

4.  **DEPOSITIONS — Suppression — Grounds.** Said depositions were taken by agreement upon written interrogatories and cross-interrogatories upon a named date and on continuances from day to day as provided in the agreement, except they were taken between the hours of 8 o'clock a. m. and 6 p. m., instead of 9 a. m. and 4 p. m., as stipulated in the agreement. Neither of the parties was present in person or by counsel at the taking of the depositions; nor was there any claim by the complaining party that he was in any way prejudiced by the irregularity. **Held,** that such irregularity was only a technical one, and not a ground for suppression of the depositions.

5.  **EVIDENCE — Opinions — Competency — Knowledge of Subject-Matter.** Where witnesses testify that they are acquainted with the general usable or rental value of the machine, to recover which the action had been brought, and which had been retained

by defendant under a retainer bond, that they have had experience in renting such machines, that their rental value does not vary, but is the same in different localities, and in whatever material the machine is used, and that its usable or rental value in the locality where detained was not different from other localities, the admission of the testimony of said witnesses as to the usable or rental value of the machine was not error.

6. **SAME—Parol Evidence Affecting Writings—Sales.** Where a manufacturer contracts by written contract with a purchaser to manufacture and sell to such purchaser a steam shovel, which shovel and all its parts are specifically and definitely described in the contract, and the seller guarantees in the contract that the machine shall be as represented therein, but the contract contains no guaranty that the machine will be suitable for or will accomplish the purpose for which the purchaser buys it, it is not error to refuse to admit correspondence between the seller and purchaser before execution of the sale contract for the purpose of showing that the seller guaranteed the machine to accomplish the purposes for which the buyer bought it.

7. **SALES—Warranties—Breach—Rights of Buyer.** Where parties to a contract of sale have stipulated what course shall be pursued by the purchaser, in the event the warranty fails, such provision must be followed by him in seeking to enforce the guaranty.

8. **TRIAL—Instructions—Requests—Instructions Already Given.** It is not error to refuse to give an instruction which correctly states the law, if the same or an equivalent instruction is contained in the charge given by the court.

9. **SALES—Conditional Sales—Breach of Warranty—Waiver.** The contract provided that, upon the seller's shipping the machine to the purchaser, it should send a steam shovel engineer at its own expense to superintend unloading and operating the engine, and to demonstrate the same as represented in the contract, and if, after the trial and test, the machine proved to be as guaranteed in the contract, the purchaser was to accept it and relieve the seller from further expense. On the other hand, if the seller was unable to demonstrate its guarantee, it agreed to remove the machine at its own expense and refund all money paid on the purchase price, and the purchaser waived all claims for possible damage or expense. The contract also reserved the title and ownership in the seller until payment of the entire purchase price. The purchaser received the machine. and continued to use same until the seller brought a replevin action to recover it, because of the purchaser's failure to pay the remainder of the purchase price. Whereupon the purchaser gave a retainer's bond and retained the machine and continued to use it as his own. Held, that failure of the seller to offer to return the part of the purchase price paid did not defeat his right of recovery, where it was not shown that the purchaser, upon discovery of the alleged breach of warranty, offered to return the machine upon the repayment to him of the purchase price paid, and that the burden to show such facts was upon the purchaser.

(Syllabus by the Court.)

*Error from District Court, Johnston County;*
*A. T. West, Judge.*

Action by the Vulcan Iron Works Company against Wm. J. Scott. Judgment for plaintiff, and defendant brings error. Affirmed.

*Garrett & Bingham* and *A. G. Mosely,* for plaintiff in error.

*Nick Wolfe, Wm. L. Lawrence,* and *Brown, Hahn, Sanger & Froehlich,* for defendant in error.

HAYES, J. This is an action in replevin, instituted by defendant in error, plaintiff in the court below, against plaintiff in error, defendant below, to recover the possession of a certain steam shovel, and damages for its detention. The action was originally brought in the United States Court for the Southern District of the Indian Territory, at Tishomingo, before the admission of the state. Upon the admission of the state, it was transferred under the provisions of the Enabling Act and the Schedule to the Constittuion to the district court of Johnston county, where a trial to a jury was had. The trial resulted in a verdict and judgment in favor of plaintiff. Plaintiff commenced the action by filing in the court below a pleading designated an "affidavit" together with a bond, and caused a writ of replevin and summons to issue, which were served and the property in controversy was taken into possession of the marshal, who, after retaining bond had been executed and delivered to him by defendant, returned the property to defendant. The only attempt of plaintiff to file any complaint or other pleading when the action was begun consists of the instrument filed by him, designated an "affidavit," which is as follows:

"In the United States Court at Tishomingo, Southern District Indian Territory before the Honorable Hosea Townsend, Judge. The Vulcan Iron Works Co., Plaintiff, v. William J. Scott, Defendant. The plaintiff, the Vulcan Iron Works Company, states that the property claimed by them in this court is one Giant, Class D, steam Shovel, No. 1087, and is worth $8,750.00, $3,000.00 of which has been paid, and for the detention of said shovel they believe that they ought to recover $6,157.00.

That they are the owners of said steam shovel and are entitled to the immediate possession of the same. That the said steam shovel is wrongfully detained by the defendant, William J. Scott. That plaintiff's cause of action herein accrued within one year past. Q. D. Gibbs, Attorney for Plaintiff."

After the return of the writ by the marshal, defendant appeared and moved the court to quash the writ upon the ground that no sufficient affidavit as required by statute had been filed. Upon a hearing of this motion, the court found that the complaint and affidavit were sufficient, but allowed plaintiff to amend by filing separate complaint and affidavit. To this action of the court no exception was taken, but, upon the filing by plaintiff separately his amended complaint and amended affidavit, motion was made by defendant to strike them from the files, and also a motion to quash the writ and dismiss the action, because there was never any original complaint filed, and the action for said reason never commenced. To the overruling of these motions, exceptions were taken and saved by defendant, and we think same sufficient to present the question whether upon plaintiff's filing the foregoing instrument designated "affidavit," and having summons issued, an action was thereby commenced sufficient to authorize the issuance of the writ of replevin. All questions presented by this appeal, regulated by statute, are determined by the statutes in force in the Indian Territory prior to the admission of the state, and we therefore must look to said statutes for answers of such questions. One of those statutes provides that in an action to recover the possession of specific personal property plaintiff may, at the commencement of the action, or at any time before judgment, claim the immediate delivery of the property by filing in the office of the clerk an affidavit showing certain things specified by the statute and by executing and filing a bond, conditioned as by statute provided. Sections 5571-5575, Mansf. Dig. (Ind. T. Ann. St. 1899, secs. 3542-3546).

Section 4967 of the same statute (section 3172) defines an action to be commenced by filing in the office of the clerk a complaint and causing a summons to be issued thereon. It is contended by plaintiff in error that no complaint was filed in

this action before the attempted issuance of summons, and for said reason no action has ever been commenced. Defendant in error, on the other hand, contends that the instrument designated "affidavit" filed by it contains all the necessary elements of a complaint, and that it should be held to include both the complaint and an affidavit, and to be sufficient to authorize the issuance of a summons, and to sustain this action. This question does not appear to have been determined by the Supreme Court of Arkansas before the adoption of the statute into the Indian Territory in any case that arose in the circuit courts of that state; but it was considered and determined in cases that arose in courts of justices of the peace. *Hanner v. Bailey,* 30 Ark. 681; *Hawes v. Robinson,* 44 Ark. 308. We think these cases decisive of the question.

Chapter 91, Mansf. Dig. (Ind. T. Ann. St. 1899, c. 41), defines the jurisdiction of courts of justices of the peace, and regulates the procedure in such courts. One of the sections of that chapter provides that ordinary actions shall be commenced by summons, but, before the summons is issued, the plaintiff shall file with the justice the account, the written contract, or a short written statement of the facts on which the action is founded. Section 2716. But another section of said chapter provides that the provisions of said chapter are not intended to govern the proceedings of justice courts in replevin actions, but that in such actions the rules of procedure then in force or that might thereafter be in force in the circuit courts, so far as they are applicable, shall govern justices' courts. Section 4124, Mansf. Dig. (Ind. T. Ann. St. 1899, sec. 2804). This section clearly requires all rules of procedure in replevin actions in the justices' courts and in the circuit courts to be the same where the rules in the circuit courts may be made applicable to the justices' courts. In *Hanner v. Bailey, supra,* an affidavit in an action of replevin was filed before a justice of the peace, but no separate complaint or statement of facts constituting plaintiff's cause of action was filed. The affidavit filed contained the facts upon which the action was founded, and it was held that such affidavit served the office of both complaint and affidavit, and that the statute requiring a writ-

ten statement of the facts upon which the action was based had been substantially complied with. In *Hawes v. Robinson, supra,* it was said:

"In a justice of the peace's court the first object of the affidavit is to procure the order of delivery. When that is accomplished, it has performed its office as an affidavit, and thereafter serves as a complaint."

No reason appears why this rule applied to a replevin action in the justice's court would not be applicable in the district courts, or that this rule was adopted because a different rule should apply in the circuit courts which was not applicable to the justice's court. It is also in harmony with the rule adopted by the Supreme Court of that state in attachment proceedings under a similar statute. The statute authorizes a plaintiff in a civil action at or after the commencement of the action to have an attachment against the property of the defendant, just as the statute of replevin authorizes a writ of replevin to issue at the commencement of an action or at any time before judgment is rendered. There can be no reason why acts that constitute a commencement of an action in an attachment proceeding so as to authorize the writ of attachment to issue would not operate in a replevin action to constitute a commencement so as to authorize the issuance of the order of replevin. *Sannoner v. Jacobson & Co.,* 47 Ark. 31, 14 S. W. 458, was begun in the circuit court by the filing of an affidavit for attachment, without a separate complaint, and it was held that, if the affidavit filed contained sufficient facts to constitute a complaint, it could serve both as an affidavit and a complaint, and authorized the issuance of the attachment. See, also, *Lehman v. Lowman,* 50 Ark. 444, 8 S. W. 187.

The affidavit filed in the case at bar contains every element of a complaint essential to its validity. The style of the court in which the action is brought is given, the names of the parties are stated, and they are distinguished as plaintiff and defendant. The property sought to be recovered is described. Plaintiff is alleged to be the owner thereof, and it is charged that defendant unlawfully detains such property, that plaintiff is entitled to immediate possession of same, and claim is made for damages. It

is true that in the body of the affidavit the name of only the plaintiff is set out, and the name of the defendant does not appear; but it is not a fatal defect to omit the names of the parties to the body of the complaint, where they are set out in the title. *McLeran v. Morgan*, 27 Ark. 148.

Nor does the affidavit contain a prayer for judgment; but, upon the facts stated, it is clearly apparent to what judgment plaintiff would be entitled upon the establishment of such facts by competent evidence, and the omission of the prayer under these conditions is not fatal to the action, and constitutes only an irregularity that may be cured by amendment. *Sannoner v. Jacobson & Co., supra.*

The next assignment of error complains of the action of the court in overruling defendant's motion to quash certain depositions. The depositions were taken under an agreement of the parties on the 22d day of October, 1907, and on continuances from day to day until December 2, 1907. The taking of them was therefore begun before the admission of the state and completed after its admission. They were returned and filed in the office of the clerk of the district court of Johnston county on December 5, 1907. The statute requires that when depositions are completed, the officer before whom the same are taken shall seal them up and direct them to the clerk of the court in which the action is pending, with a note showing them to be depositions and the style of the case in which they are taken. Section 2950, Mansf. Dig. (Ind. T. Ann. St. 1899, sec. 2065). These depositions were taken as in an action pending in the United States Court for the Central District of the Indian Territory. The record does not disclose whether they were directed to the clerk of the United States court for said district or to the clerk of the district court in which they were filed; and no complaint is made as to any irregularity in directing the depositions. The irregularity complained of is that they were filed in the district court of the state, rather than in the court in which the action was begun. This contention is without merit. The statute requires that a deposition shall be directed to the clerk of the court in which the action is pending, and that such deposition shall

·be opened and published by the clerk at the time they are filed in his office. Sections 2065-2068, Mansf. Dig. (sections 1407-1411, Ind. T. Ann. St. 1899). These statutes clearly contemplate that the depositions shall be filed in the office of the clerk of the court in which the action is pending·at the time the deposition is returned. This action was, under the provisions of the Enabling Act and the Schedule to the Constitution, at the time these deposisiions were filed and their taking completed, pending regularly in the district court of Johnston county, the successor of the court in which the action was begun, and they were therefore properly filed in the office of the clerk of said court.

The depositions were taken upon written interrogatories and cross-interrogatories under an agreement that they might be taken on the 22d day of October, 1907, to be continued from day to day between the hours of 9 o'clock a. m. and 4 o'clock p. m. They were taken at the place designated in the agreement on the 22d day of October, and on continuances from day to day, but between the hours of 8 o'clock a. m. and 6 o'clock p. m., and for this irregularity it is urged that the depositions should have been quashed. Neither party was present, either in person or by attorney at the taking of said depositions; nor could any purpose have been served by their being present, except to observe the regularity of the taking of the depositions, since they were taken upon written interrogatories, and neither party could have been permitted, under the agreement, to ask questions or to participate in the taking of the depositions. It is not claimed by defendant that he attempted to be present either in person or by counsel, and was prevented on account of commencing the taking of the depositions at an earlier hour, or on account of concluding them at a later hour than named in the agreement; nor has any attempt been made to show that he was prejudiced thereby. We think the objection purely a technical one; and, in the absence of any claim of prejudice, was properly overruled. *Ueland v. Delay*, 11 N. D. 529, 89 N. W. 325.

As an element of damages sustained by plaintiff by reason of defendant's detaining the machine, plaintiff sought by the depositions of three witnesses to establish the usable value of the ma-

chine during the time of its wrongful detention. These witnesses were asked upon direct interrogatories if they were acquainted with the reasonable usable value per day of machines of this character. In response to these interrogatories the witnesses answered in the affirmative, and stated in answer to further interrogatories that the usable value was $15 per day; that said amount was the rental value of such machines. Objection was made to the introduction of this evidence upon the ground that the witnesses were not required to qualify themselves as to their knowledge of the usable value of the machines in the locality where this machine involved was detained by defendant, or at the time of its detention. We think there can be no doubt as to the correctness of defendant's contention that the measure of damages is to be determined by the reasonable usable or rental value of the machine at the time and place where it was detained by defendant, to which place it had been by plaintiff shipped for use; and, if the answers of the witnesses to the direct interrogatories referred to above constituted all the evidence of these witnesses upon this matter, the action of the court in refusing to sustain defendant's objection to this evidence would constitute prejudicial error; but upon the cross-interrogatories these same witnesses testified that the market rental value of steam shovels of the character here involved was general and did not vary in different localities, nor because of the difference in the nature of the soil in which they were used; that the usable and rental value in the Indian Territory, where this shovel was used, was the same as in other states; that it was no greater or less in one section of the country than in another. They testified to having had experience in handling such shovels, using and renting the same; and to their knowledge of the general market usable value. Under this evidence, we think the answers of the witnesses objected to were rendered competent, and it was not error to refuse to strike them out. If the market usable value of this machine was not general and uniform, as testified to by these witnesses, and the same in the Indian Territory as elsewhere, defendant's remedy was to rebut this testimony.

A consideration of the other assignments of error requires a fuller statement of the facts as alleged in the pleadings and established by the evidence. Plaintiff by its amended complaint alleges that on February 6, 1906, it sold to defendant the steam shovel in controversy at a price of $8,750 net f. o. b. car, Toledo, Ohio; that payment on said purchase price was made by defendant as follows: $3,000 cash in hand and the remaining $5,-750 to be paid after fifteen days trial, as per contract—that the contract of sale was in writing, and a copy thereof was attached to the complaint as an exhibit and made a part thereof. The contract provides that plaintiff upon shipping the machine to defendant shall send a steam shovel engineer at its own expense for fifteen days of ten hours each to superintend unloading and operating the engine, and to demonstrate same to be as represented in the contract. It further provides that, if after said trial and test had been made the machine prove to be as guaranteed in the contract, defendant is to accept same, and relieve plaintiff from further expense; and, if during the trial should any part of the machine prove defective or any change necessary, plaintiff is to have reasonable time within which to replace such parts or make such changes. If, after such time, plaintiff is unable to demonstrate its guarantee, it agrees to remove the machine at its expense and refund all money paid on the purchase price, and defendant waives all claims for possible damage or expense. This contract also reserves the title and ownership of said machine in plaintiff until payment of the entire purchase price is made. Plaintiff alleges a faithful compliance on its part with all the provisions of the contract, and that defendant has failed and refused to pay the balance on the purchase price. Defendant by his amended answer to the amended complaint admits the execution of the contract, the payment of the $3,000, and his refusal to pay the remainder; but he denies that plaintiff has faithfully performed its part of the contract. He also alleges that the contract was obtained by the false and fraudulent representations of plaintiff; that the machine, which defendant had not seen, and which at the time of the execution of the contract had not been manufactured, was incapable of handling the material defendant required

it for; that it was defectively constructed, and not in compliance with the contract and representation of plaintiff. A great number of defects are alleged and set out in detail in the amended answer. He also alleges that plaintiff failed and refused to test the shovel as agreed in the contract, and that defendant offered and agreed to return the shovel to plaintiff and rescind said agreement, if plaintiff would repay the $3,000 cash paid to it by defendant, and that plaintiff refused to accept this offer. He alleges that by reason of the defects in the shovel and the delay in the delivery thereof he was damaged in the total sum of $6,000; and he prays that plaintiff take nothing by the action, but that he have judgment for the $3,000 paid on the purchase price, with interest and judgment also for the further sum of $6,000 damages. After the machine had been delivered, plaintiff sent its sales agent to collect the balance due on the contract. This agent went to Lester, Ind. T., where defendant was then operating the machine, and demanded payment of the balance due. Defendant stated that he was unable to pay then, but would be able to pay in the course of a week or ten days. The agent testifies that he waited a week or ten days, and then again asked defendant for the money. During all of this time defendant was using the machine. Defendant told the agent that he did not have the money, but was figuring with a Mr. Cobb for the money, and that he hoped to get it in a few days, but the agent demanded the money or possession of the machine, and, failing to receive payment, undertook to take possession of the machine and remove it from the pit where it was working. Defendant then took away the railway rails so that the shovel could not be removed, and the agent started to bring a replevin action to replevy the machine. Thereupon an agreement was effected between plaintiff's agent and defendant, which was reduced to writing, and reads as follows:

"In consideration of the Vulcan Iron Works Company of Vulcan, Ohio, agreeing to leave its steam shovel where it now stands until November 1, 1906, I, Wm. J. Scott, agree to pay to the said Vulcan Iron Works Company of Toledo, Ohio, the sum of $5,950, either on or before November 1st, 1906. And, in case default is made in said payment, the said Wm. J. Scott agrees to

allow the said Vulcan Iron Works Company, or its agent, to remove said shovel and to use his railway tracks or any other implements of service at his command that may be required in the removal, and the said Wm. J. Scott agrees not to interfere in any wise in the removal of said shovel. In testimony whereof, I have hereunto placed my hand this 17th day of October, 1906. Wm. J. Scott. Witness: Q. D. Gibbs."

Because of the introduction of this contract in evidence by plaintiff over his objection, defendant asks a reversal of the cause, upon the ground that it constitutes a variance betwen the proof and the allegations of the petition. If this agreement constituted a new contract covering the entire transaction between the parties, the admission of this agreement in evidence would probably constitute error; but, whether prejudicial error in that event, it is not necessary to determine. In a replevin action where plaintiff claims possession under a special ownership, he must set forth all the facts upon which his claim of special ownership is based; and his proof must be directed to the establishment of the facts pleaded constituting such ownership. *Perry County Bank v. Rankin,* 73 Ark. 589, 84 S. W. 725, 86 S. W. 279; *Randall v. Persons,* 42 Neb. 607, 60 N. W. 898; *Robinson v. Kilpatrick-Koch Dry Goods Co.,* 50 Neb. 795, 70 N. W. 378; *Hudson v. Swan et al.,* 83 N. Y. 552; Cobbey on Replevin, sec. 601. If the agreement objected to constituted a new contract of sale by the terms of which a special ownership was created in plaintiff, in order to recover upon such contract and make it competent as evidence, plaintiff would be required to plead it. The intention of the parties, as expressed in this agreement, is not clear from the terms of the agreement; and it is only when the instrument is construed in connection with the circumstances surrounding its execution that the intention of the parties can be arrived at. At the time of its execution plaintiff was not trying to sell defendant the machine, but was attempting to collect the balance of the purchase price under the contract theretofore made, which plaintiff claimed was then due. The language of this agreement is not that defendant agrees to pay the sum named therein for the machine upon payment of which the machine shall become his property, but agrees to pay said sum in consideration of plaintiff

agreeing to leave the shovel where it was then standing until the date named in the agreement. If we look solely to the terms of the agreement, it would appear that the $5,950 was to be paid solely as a consideration for the use of the machine from the time of the execution of the agreement until the date named therein; but that such was not the intention of the parties is clear from all the circumstances surrounding the transaction. Defendant was without the money to pay the balance under the contract. He wanted an extension of time in which to make the payment. Plaintiff wanted to take possession of the machine and remove it, but could not do so without the use of some of defendant's property. Defendant refused him the use of this property; whereupon they entered into this agreement by which, we think, the parties intended to agree that defendant should have an additional time in which to make payment of the balance due under the contract, and in consideration of which, if he did not make payment, plaintiff was to have the use of defendant's property and the service thereof in removing the machine. The machine was not removed during that period, but remained in the possession of defendant, and was used by him; but the paymer of the balance of the purchase price was not made on the date specified in the agreement. Good pleadings, we think, would have required this agreement to have been set out in the complaint. However, since it does not place upon defendant any greater burden than under the original contract, and he had the full benefit of the extension of time granted thereunder, and it does not appear that he was misled by failure of plaintiff to plead it, and since the cause was submitted to the jury under instructions based upon the original contract set out in the amended complaint, the admission of this agreement in evidence, if error at all, was not prejudicial to defendant.

The negotiations by which the sale of the machine was consummated were conducted by means of letters. Defendant wrote plaintiff that he wanted a shovel for the purpose of loading disintegrated granite from a deposit similar to the deposit on the Union Pacific at Mt. Sherman; that the material to be loaded was so open that powder or dynamite could not successfully be used,

as there was nothing to conserve its force, and requested that plaintiff advise what shovel would do the work, and, if it had no shovel adapted to such purpose, that it provide such a shovel. In answer to this letter and other letters of similar character written by defendant to plaintiff, plaintiff recommended the shovel bought as best adapted for the class of work desired. In one of the letters written to defendant before the contract of sale was executed, a pamphlet was inclosed by plaintiff, which contained cuts of the machine offered for sale by plaintiff and printed descriptions thereof. The pamphlet contained the following statement relative to the machine: "Vulcan Steam Shovel, the quickest acting and easiest operating, the largest result producer of the age. We guarantee results as well as mechanical construction." The written contract of sale provides that plaintiff sells to defendant one 75-ton steam shovel, standard make, built according to the specifications attached to the contract, and made part of it. Other clauses of the contract guarantee the shovel to be as represented in the contract, but the contract contains no guaranty that it will do the work for which defendant desired it. Defendant offered to introduce in evidence the pamphlet referred to above for the purpose of showing that plaintiff guaranteed the machine to do the special work for which defendant desired it; but his offer to do so was overruled by the trial court. *Stanford et al. v. National Drill & Mfg. Co.*, 28 Okla. 441, 114 Pac. 734, recently decided by this court, is decisive of this question. The evidence offered was not competent, either for the purpose of adding to or varying the written contract executed by the parties, or to establish an implied warranty that the machine would do the work for which defendant bought it. Since the parties reduced their contract to writing, their respective obligations must be ascertained from that instrument, and consist of such only as are imposed by the terms of the contract or that may be implied therefrom. The specifications attached to and made part of the written contract describe in detail the character of machine sold and to be delivered by plaintiff, mentions the different parts thereof, describes their dimensions, material out of which to be constructed, and their capacity. As to the duty of the vendor

under such a contract, this court, in the last-mentioned case, quoted with approval, together with other language from *Davis Calyx Drill Co. v. Mallory et al.*, 69 C. C. A. 662, 137 Fed. 332, 69 L. R. A. 973, the following:

"On the other hand, when the manufacturer or dealer contracts to make or to deliver a specific and definitely described article, to enable the vendor to accomplish a known purpose, the essential part of his obligation is the delivery of the identical article described in the contract; and the delivery of a different article, although it may better accomplish the desired result, is not a performance of his agreement, and does not entitle him to recover the purchase price. The furnishing of the article described, and that alone, whether that article is fit for the known purpose to which the vendor intends to apply it or not, constitutes a compliance with the contract by the vendor, and entitles him to secure its fruits."

Defendant introduced evidence tending to establish that the machine delivered was not in accordance with the specifications in the contract, and that several of its parts were defective. He offered to introduce evidence showing that, because of such defects in the machine and on account of its not being the machine specified in the contract, he had sustained damages, showing the amount thereof. All this evidence as to the damages sustained and the amount thereof was properly rejected by the court. Under an ordinary contract of warranty, where part of the purchase price has been paid upon the purchase of the machine, on failure of the warranty, the purchaser has two remedies at his election: He may keep the machine and recover damages from defendant between the price to be paid and actual value of the machine, together with the compensation for the loss incurred by an effort in good faith to use it for the purpose warranted, or he may, upon discovery of the defects in the machine, by promptly returning the same or offering to do so on condition that the seller return all money received by him, recover the consideration paid. *Osborne & Co. v. Walter*, 12 Okla. 20, 69 Pac. 593. But the parties to this contract have stipulated what course shall be pursued in event the warranty fails, and this provision of the contract must be followed. *King v. Towsley*, 64 Iowa, 75, 19 N. W. 850.

Defendant has expressly waived all claim to possible damages on account of breach of the warranty of the contract. Under the contract, if the machine when delivered and tested was defective, plaintiff was granted a reasonable time in which to replace the defective parts and make such changes in the machine as were necessary to make it comply with the specifications of the contract. If he failed in that, then plaintiff was to remove the machine, and repay to defendant all moneys paid by him thereon. When the machine proved not to be as represented in contract, defendant, under the provisions of the contract, did not have the right to accept the machine and sue for damages, for he had waived all damages. His remedy was to offer to return the machine, which had never become his, in such event, upon plaintiff refunding to him the money he had paid.

Some of the special instructions requested by defendant and refused correctly state the law, but the equivalent of said instructions is contained in the charge given by the court; and their refusal was not error. *Finch v. Brown,* 27 Okla. 217, 111 Pac. 391; *Citizens' Bank of Wakita v. Garnett,* 21 Okla. 200, 95 Pac. 755.

By one of the special instructions requested by defendant the court was requested to charge the jury that, if the machine did not comply with the specifications of the contract, defendant was not obliged to accept it; and that, in order for plaintiff to rescind the contract and recover in this action, he would have to return to defendant the $3,000 that defendant had paid on the machine; and that defendant would have a right to retain the machine until the return of said money or a tender thereof to defendant. Plaintiff does not seek in this action to recover upon the theory that the contract was not complied with in the character of machine delivered, and that he is entitled to possession thereof under that portion of the contract by which it is provided that he shall remove the machine at his expense, if it be defective, and such defects are not capable of being repaired so as to be acceptable to defendant. It is defendant's defense that the machine did not comply with the contract, and that plaintiff is not entitled thereto until his obligations under the warranty have

been discharged. These contentions present the question whether that portion of the contract which releases plaintiff from all claims for damages by reason of breach of the warranty also changes the general rule under usual contracts of warranty, whereby, in order for defendant to recover the amount paid upon the purchase price, he must promptly return or offer to return the machine, on condition that the seller shall return the purchase price paid. It is contended by defendant that that portion of the contract which provides that, if plaintiff fails to demonstrate its guaranty, it will remove the machine at its expense, and refund the money has this effect, but we cannot concur in this contention. The machine involved is of great weight and expensive to remove. All that was intended by this provision was that the removal of the machine, if it failed to be as specified in the contract, and was not acceptable to defendant, and he desired to return same, should be at the expense of and by plaintiff. It was not intended to provide that if, although the machine was defective, defendant could take charge thereof, use same, make no objections thereto and continue to use it and refuse to pay for it, and plaintiff be unable to recover either the purchase price or the machine, without returning the whole of the money received by it. There is evidence tending to establish that defendant has during the entire time since his purchase been in possession of this machine, and used it, not only before, but after, this action was begun. Although there were defects in the machine, if defendant, after the test was made, retained the machine, used it and treated it as his own, and when this action was brought gave bond and retained possession of it, and continued its use, he cannot be heard to say that he had not waived the defects in the machine and accepted same. Under the contract, he was not required to remove the machinery or to be at the expense thereof in returning it to plaintiff. Of this duty he was relieved by the specific terms of the contract, but he was not relieved of the obligation to tender the property to plaintiff upon repayment to him of the money paid. He could not keep the machine and treat it as his own, and at the same time ask to be relieved of the obligations of the contract to pay therefor. He had elected by the

provisions of the contract which he executed to waive one remedy for violation of the warranty, but his other remedy and the obligations imposed upon him to avail himself of it were not affected by the contract other than that the expense of removing the machine should be by plaintiff. The court did instruct the jury that if they found that the machinery did not comply with the specifications in the contract, and was not tried and accepted by defendant in accordance with the terms of the contract, and defendant offered to turn back the machine to plaintiff upon returning to him the money paid on same, then their verdict should be for the defendant. No exception was taken to this instruction, and, under the facts, it was as favorable to defendant as he was entitled.

Objections have been urged here to several of the instructions given by the court, but an examination of the record discloses that to most of the instructions of which complaint is now made no objections were made or exceptions taken at the time of the giving thereof; and, as to the instructions to which exceptions were saved, the same have not been presented in counsel's brief in sufficient compliance with the rules of the court to require a consideration thereof.

Upon all the issues formed by the pleadings, the evidence was conflicting; and, upon all of such issues the establishment of which was necessary to plaintiff's right of recovery, there is evidence reasonably tending to support the verdict returned by the jury, and it was not error to refuse to instruct the jury peremptorily to return a verdict for defendant.

After a careful review of the entire record, we find no error requiring a reversal of the cause, and the judgment of the trial court is affirmed.

All the Justices concur.