## MOLINE PLOW CO. v. WILSON.

No. 8805—Opinion Filed June 25, 1918.

Rehearing Denied Nov. 19, 1918.

Appeal for Leave to File Second Petition for Rehearing Denied Dec. 31, 1918.

(176 Pac. 970.)

1. **Sales—Action for Purchase Price—Breach of Warranty of Fitness—Damages.**

Upon the trial of a case for the breach of a warranty of fitness for a particular purpose, it is necessary to prove the value of the property with its infirmity and also its value if it had been as warranted, together with the loss incurred in an effort in good faith to use it for the purpose warranted, and in the absence of such proof the purchase price is prima facie its value as warranted.

2. **Same—Breach of Warranty—Relief.**

When a sale is accompanied with a written warranty in such terms as import a legal obligation, without any uncertainty as to the object or extent of such warranty, nor as to extent of liability or remedy if such warranty fail, both parties are conclusively bound by its terms, and are entitled only to the relief contained in its provisions.

(Syllabus by Springer, C. )

Error from County Court, Carter County; Thomas W. Champion, Judge.

Action by the Moline Plow Company against T. E. Wilson. Verdict and judgment for defendant, motion for new trial overruled, and plaintiff brings error. Reversed and remanded, with direction.

A. Eddleman J. W. Harreld, and Stephen C. Treadwell, for plaintiff in error.

Sigler & Howard, for defendant in error.

Opinion by SPRINGER, C. In this opinion the plaintiff in error will be referred to as plaintiff and the defendant in error will be referred to as defendant; that being their status in the lower court.

This was an action commenced in the county court of Carter county by the Moline Plow Company against the defendant to recover the sum of $402.27, principal and interest due on various notes.

The first count of the petition is a declaration of indebtedness of the defendant to the plaintiff upon a promissory note for $80, and it is alleged in the petition that the note was given as part of the purchase price of an Adriance grain binder.

The petition in this case contains several counts, a defense being made only as to the first.

On April 2, 1916, the defendant filed an answer, the first count of which contains a general denial of the allegations of the petition. The answer also admits the execution by the defendant of all the various notes sued on. In his answer the defendant further alleges by way of cross-petition that at the time he executed the note sued on in the first count of this action he had a very large crop of wheat and oats, which was about to mature and was about ready to cut, and that the agent of the plaintiff, the Moline Plow Company, came to Springer and to this farm, and that he explained to the agent that he was buying the grain binder for the purpose of saving the crop of grain; that the agent was shown the crop, and fully appraised of all the facts and circumstances in connection with it, and knew that it was necessary for the defendant to obtain a binder that would cut and save his crop, and knew that, unless the binder that the plaintiff was selling the defendant would cut, bind, and save the crop, it would be a great loss and detriment to the defendant, and having full knowledge of these facts, that it would thereafter be too late for the defendant to obtain another binder to cut and bind the crop, and, with full knowledge of all these facts, the agent sold the binder to the defendant and guaranteed it; that said binder was guaranteed by the agent of the Moline Plow Company to do the work, and to cut, bind, and save the crop and but for the agreement of said agent the defendant would not have purchased the binder; that the binder was not as guaranteed; that it would not cut the grain, and it became impossible to cut the grain, and that defendant notified J. M. Arnold, who was a dealer and agent for the plaintiff, of the failure of the machine to do the work, and that the plaintiff sent a man to inspect the binder and to repair the same, but that he was unable to repair the binder or fix it so as to make it do the work properly and to bind the grain and save the crop, and that, owing to this fact, the defendant returned the binder to the dealer, J. M. Arnold; that said warranty was oral; that the defendant

first gave a written order for the binder but said contract was afterward abandoned, and another binder, different from that originally ordered, was delivered to the defendant; that by reason of said binder being defective and not doing the work as above specified, the plaintiff was damaged in the sum of $165, the price paid for the binder, and the further sum of $2,000, as will hereinafter be shown; that by reason of said binder not being as guaranteed, by the breach of warranty above specified, and the said defendant not being able to cut and bind said grain, the defendant lost 100 acres of wheat, 150 acres of oats, about 50 acres of barley, and that said wheat was of the value of $14 per acre, said oats of the value of $10 per acre; and that the defendant was damaged in said sum, but expressly waives all damages except the sum of $1,000.

There is some testimony in the record of both the plaintiff and defendant that when the order for the binder was signed it provided for a machine carrying an eight-foot right-hand blade. On being informed that the factory did not manufacture a machine carrying an eight-foot right-hand blade, the defendant agreed that he would accept the machine with the seven-foot right-hand blade. Whether the original contract was changed so as to make it provide for the machine with the seven-foot right-hand blade, or whether a new contract was drawn up and signed, the evidence of the defendant is not just clear, nor do we think it makes any difference. The original contract was never abandoned, and at most it was changed by agreement and consent of both parties so as to provide for a machine carrying a seven-foot right-hand blade, instead of a machine carrying an eight-foot right-hand blade.

The testimony in this case shows that the defendant is a farmer well skilled in the use and operation of farm machinery; that he is a farmer of more than ordinary skill and ability we think this record conclusively proves. According to his testimony he had owned at various times during his farming experience three Deering machines, two McCormick machines before his experience with the Adriance. His testimony shows that he had raised and threshed as much as 6,200 bushels of oats in one season. The evidence in this case for the defendant shows that the Adriance was received at his farm, which seems to be located near a place called Springer. At that time he was the owner of a McCormick harvester. When the Adriance was first put in operation a 20-horse power tractor was used as the power or propulsion. The McCormick was attached immedi-

ately to the tractor, and the Adriance was attached to the McCormick. The evidence of the defendant shows that the Adriance caused trouble from the beginning. It appears from the testimony in this case that when the wheat was cut and delivered to the platform it was there received onto a canvas, which carried it to a place where it was received between two more canvases, and from that place elevated into the retaining springs and binder trip; that the sheaves which were regulated as to size by the binding trip were packed to their proper size by packers; that after the packers had sufficiently compressed the straw to cause the binder trip to automatically release the needle passed over and into the knotter, and in that way the sheaves were tied and the discharge arms at the same time automatically discharged them onto the carrier.

It seems from the testimony that the Adriance binder delivered to the defendant would not elevate the grain; that the needle would not work properly into the knotter, and that it would not tie the grain; that it would choke up, and that the binder trip and discharge arms would not work so as to keep the machine free from the grain; and that the machine would become choked down and the bull wheels refuse to revolve, and would drag on the ground.

The evidence shows that Mr. Arnold, the agent for the plaintiff, was there at the time of the demonstration. The testimony of the witnesses for the defendant tends to support the allegations of the answer as to the defective work done by the machine. Their testimony, however, was directly contradicted by the evidence of the plaintiff.

The evidence shows that on the first day the machine was attempted to be operated, and after a short trial, it was detached from the tractor and left standing in the field the remainder of that day. The testimony as to why it was detached from the tractor as between the plaintiff and the defendant is conflicting. A large number of witnesses testifying for the defendant said that it was because of the defective work done by the Adriance, and an equally large number of witnesses testifying for the plaintiff said that it was because the ground was so wet and muddy that the tractor could not pull both machines, and for that reason the Adriance was detached and left standing in the field. The evidence of the defendant, however, conclusively shows that afterwards four mules were hitched onto the machine, and it was continuously used throughout the remainder of the harvest season.

The evidence shows that T. E. Wilson himself used the machine 9 days, and that one John Wilson used the machine 14 days, and then afterwards one Morris operated it—just how long the evidence does not show. It was propelled first by the tractor, then by 4 mules, then was again attached to the tractor. The evidence of T. E. Wilson conclusively shows that the Adriance was requisitioned in harvesting the crop while his McCormick stood idle. His explanation for that, however, is that he used the tractor threshing, and that he did not have sufficient team power to run his threshing machine and the McCormick, but that he did have sufficient team power to run his threshing machine and the Adriance, and in that way it was requisitioned to save his crop.

The testimony of the defendant shows that he made complaint to Mr. Arnold the first day the machine was attempted to be used, and that no other complaint of any kind or nature whatever was made and no notice of any kind or character was served upon Mr. Arnold or any one else showing that the machine would not harvest the crop. Mr. Wilson made no effort whatever to comply with any of the terms and conditions of the written warranty until after the collector had been at his place after the note became due and payable, which the evidence shows was some time in September or October, and some of the witnesses say as late as November. After the collector had been at the place to collect the note in dispute in this case, he took the machine to Springer and left it standing on some lots which he claims belonged to Mr. Arnold.

The case was tried to a jury which, under the evidence admitted by the court and its instructions, returned a verdict in favor of the defendant for the sum of $500. A motion for a new trial was overruled, and the case is before us for review upon petition in error. At the close of the evidence for the defendant the plaintiff interposed a demurrer, which was by the court overruled, and exception saved, and the plaintiff moved the court to peremptorily instruct the jury to return a verdict in its favor, which was likewise overruled and exception saved.

The answer in this case pleads damages by reason of a breach of warranty of fitness. As to the measure of damages, sections 2865 and 2866, Rev. Laws 1910, govern:

"The detriment caused by the breach of a warranty of the quality of personal property, is deemed to be the excess, if any, of the value which the property would have had, at the time to which the warranty referred if it had been complied with over its actual value at that time.

"The detriment caused by the breach of a warranty of the fitness of an article of personal property for a particular purpose, is deemed to be that which is designed in the last section, together with a fair compensation for the loss incurred by an effort in good faith to use it for such purposes."

The record in this case nowhere shows what the Adriance was worth, if anything, at the time it is alleged to have been delivered to the defendant, nor is there any evidence in the record whatever which shows, or tends to show, what it would have been worth if it had been as warranted.

In the case of Spaulding Mfg. Co. v. Cooksey, 34 Okla. 790, 127 Pac. 414, the court said:

"Measured by this rule, defendant was not entitled to recover anything on his cross-petition under the evidence in this case, as there is a total failure to prove damages as required by this section of the statute" [referring to statute above quoted.]

In the case of Burgess et al. v. Felix, in an opinion by Commissioner Rittenhouse, 48 Okla. 193, 140 Pac. 1180 this court said:

"Under the general rule, the measure of damages recoverable for a breach of warranty of personal property is the difference between the actual value of the property at the time of sale and what its value would have been if it had conformed to the warranty. But, in the absence of other evidence, the purchase price is prima facie its value as warranted."

In the case of K. C. Hay Press Co. v. Williams, 51 Okla. 6, 151 Pac. 570, this court said:

"There was evidence of the purchase price of the machine. No other evidence of the actual value of the machinery as warranted was introduced, and under the rule advanced in Burgess et al. v. Felix, supra, the purchase price will be regarded as such value; but there is a total failure of evidence as to the actual value of the property. * * * Before the defendant in this action would be entitled to a recovery, it would be necessary for him to prove the difference between the actual value of the goods and what the value would have been if the goods had been as warranted."

Again the rule is laid down in 35 Cyc. 468, to be as follows:

"The general rule as to the measure of damages on a breach of warranty is that the buyer is entitled to recover the difference between the actual value of the goods and what the value would have been if the goods had been as warranted, and in the application of the rule it is held that the fact that the goods were actually worth the price which was paid for them is immaterial. The difference between the purchase price and the actual value cannot be regarded as the measure of damages, as in such case the purchaser recovers too small a sum if he has made a bad bargain and paid more than the goods were worth, and too great a sum if he has made a good bargain, paying less than the goods were worth. It is true that in some cases the rule has been stated that the measure of damages is the difference between the purchase price and the actual value of the goods; but in nearly all of these cases the theory undoubtedly is that, in accordance with the general rule, if there is no other evidence of the actual value of the goods, the purchase price will be regarded as such value."

Upon the trial of a case for the breach of a warranty of fitness for a particular purpose, it is necessary to prove the value of the property with its infirmity and also its value if it had been as warranted, together with the loss incurred in an effort in good faith to use it for the purpose warranted; and, in the absence of such proof, the purchase price is prima facie its value as warranted.

The right to relief as alleged and set forth in the cross-petition of the defendant is based upon an oral warranty. The defendant alleges that he had a large acreage of wheat and a large acreage of oats and a large acreage of barley, and that his various crops were about ready to be harvested and that the agent of the plaintiff appeared upon the scene and was shown these various crops, and was told by the defendant that he wanted a machine that could cut and save his crops, and that the agent of the plaintiff sold him the machine in dispute here, and guaranteed to him at the time that it would cut and save his crops, and knowing, if the machine would not cut and save his crops, that it was too late for him to procure another. None of these allegations are sustained by the evidence in this case. It appears to us as if the answer in this case was drawn for the purpose of defeating a demurrer in the lower court, without any hope of sustaining them by evidence on the trial of the case. On the trial the defendant admitted that he signed a written order for the machine, and that written order was signed on the 1st day of April, 1915. It is within the common knowledge of all men that wheat, nor oats, nor barley, are ripe and about ready to be cut at that time of the year in this country.

In answer to interrogatories propounded by his counsel, the defendant testified as follows:

"Q. Mr. Wilson, have you got the original contract in your possession? A. Yes, sir.

"Q. Is this the original contract? A. Yes, sir.

"Q. This is the original contract that I hand you? A. Yes, sir.

"By His Counsel: We now offer it in evidence and ask to have it marked 'Defendant's Exhibit A.'"

Attached to Exhibit A, which the defendant himself introduced in evidence, is the following warranty:

"Every machine is warranted to be well built and of good material and capable of doing good work under proper management in operating it. If for any reason the machine should not appear to work properly upon its first day's use by the purchaser, he must give immediate notice in writing to the dealer from whom the machine was purchased, stating in what respect he deems the machine to fail, and must allow a reasonable time for a competent person to be sent to remedy the alleged defect, the purchaser to render necessary and friendly aid for the purpose. If then it cannot be made to work well, the purchaser shall return it at once to the dealer from whom he purchased it, and another machine to be given in its place; and this shall be a complete settlement between the purchaser and ourselves. No provision of this warranty and agreement can be waived, altered or modified in any respect by any dealer. Continuous use of the machine or at intervals through the harvest season, or failure to notify as above or to return the machine as above provided, shall be deemed positive acceptance of it by the purchaser.

"[Signed] Adriance-Platt.

"Branch of the Moline Plow Company."

As above stated, the evidence of both the plaintiff and defendant shows that the written warranty, supra, was entered into at the time the sale was made. The written warranty in this case fully sets forth what is required of both parties in case the warranty fails. As incumbent upon the defendant, the written warranty required him to do the following things:

"(a) If the machine did not work properly, he was requested to give immediate notice in writing to the dealer from whom the machine was purchased, stating in what respect he deemed the machine to fail, and must allow a reasonable time for a competent person to be sent to remedy the defect, and further to render necessary and friendly aid for the purpose.

"(b) If the machine could not be made to work well, the purchaser should then return it to the dealer from whom he purchased it, and another machine should be given in its place.

"(c) And the giving of a new machine was deemed to be a complete settlement between the seller and the buyer.

"(d) Continuous use of the machine after knowledge of its defects through the harvest season or failure to notify as provided in the warranty was deemed positive acceptance of the machine by the purchaser."

The defendant never served any written notice specifying in what respect the machine failed to do the work; he made no demand for another machine whatever, the giving of which was deemed to be a complete settlement between the seller and buyer; but he did continue to use the machine though the harvest season, with full knowledge of its defects, when the warranty which he had in his possession specifically provided that such continuous use was deemed positive acceptance by him. He violated both the letter and spirit of the warranty himself, then sought to enforce, not its provisions, but an action for damages to his crops entirely outside the warranty.

The question as to the proper measure of damages must, of course, to some extent depend upon the facts in each particular case. Generally such damages are recoverable as are the direct and proximate result of a breach of the warranty or such as may fairly and reasonably be considered as arising naturally, that is, according to the usual course of things, from such breach of warranty itself, or such as may reasonably be presumed to have been in the contemplation of both parties at the time of the warranty as a probable result of its breach. The wrong done and injury sustained must bear as to each other the relation of cause and effect. The written warranty in this case becomes material for two reasons: First, it is material as fixing a limitation upon the warranty; secondly, it conclusively shows the measure of damages that was within the contemplation of the parties if the warranty failed.

Now, the special circumstances under which the warranty before us was issued was fully known to both parties; the damage resulting from its breach which they would reasonably contemplate would be the amount of the injury which would ordinarily follow such breach under the special circumstances so known to both parties. Having engaged in writing, which sets forth the measure of damages recoverable if the warranty fail, both parties are concluded by its provisions. To hold otherwise would open the door to speculation and permit a substitution of damages for the breach of a warranty not within the contemplation of the parties. This question has previously been before this court in the case of Scott v. Vulcan Iron Works Co., 31 Okla. 334, 122 Pac. 186, where it is said:

"Where parties to a contract of sale have stipulated what course shall be pursued by the purchaser, in the event the warranty fails such provisions must be followed by him in seeking to enforce the guaranty."

Also in the case of Hope v. Peck, decided by this court, reported in 132 Pac. 344 [opinion superseded by 38 Okla. 531, 134 Pac. 33], it is said:

"Parties to a contract of sale having stipulated what course should be pursued by the vendee in the event the warranty fails, such provision must be followed by the vendee in seeking to enforce the guaranty. * * * The written contract of guaranty stipulated the course to be pursued by the vendee in the event of the failure of the warranty, but he failed in any way to follow this provision. On the contrary, he sought to retain the horse, and by way of recoupment to extinguish plaintiff's claim on the notes, and in addition thereto to recover a judgment against the plaintiff for damages. Under this written guaranty such a course was not permissible."—citing Scott v. Vulcan Iron Works, 31 Okla. 334, 122 Pac. 186.

This same question was before the Supreme Court of Minnesota in the case of Rowell v. Oleson, 32 Minn. 288, 20 N. W. 227, wherein it is said:

"That the parties to such a warranty may agree on a remedy for a breach, and make it exclusive, is not to be doubted. They did so in this warranty: 'If said machine will not bear the above warranty, it is to be returned after a trial of two weeks, to the place of delivery, and another substituted that will answer such warranty, or the money and notes immediately refunded.' The language of this [warranty] does not give the purchaser any option. It is imperative that the machine 'is to be returned after a trial of two weeks'; and then the vendor was to have the right to replace it with another or to refund the money and notes immediately. * * *"

In the case of Nichols-Shepard v. Rhoadman, 112 Mo. App. 299, 87 S. W. 62, the court held that the written warranty between the parties provided the remedy that should be pursued if the warranty failed, and that both parties were conclusively bound by its provisions.

Applying the rule as laid down by this and other courts, we are constrained to hold this warranty to be one of limitations upon the consequences of a failure to make the warranty good.

"If then it cannot be made to work well, the purchaser shall return it at once to the dealer from whom he purchased it; and another machine to be given in its place; and this shall be a complete settlement between the purchaser and ourselves."

This then was the scope and extent of the liability within the contemplation of the parties at the time the sale was made and warranty given. When a sale is accompanied by written warranty in such terms as import a legal obligation, without any uncertainty as to the object or extent of such warranty or as to extent of liability or remedy if such warranty fail, both parties are conclusively bound by its terms, and are entitled only to the relief contained in its provisions. Accordingly we hold that the demurrer of the plaintiff to the evidence of the defendant was improperly overruled, and the court should have peremptorily instructed the jury on the motion of the plaintiff to return a verdict in its favor.

For reasons assigned, the case is reversed and remanded, with directions to render judgment for plaintiff for the full amount sued for, together with interest, attorney fees, and costs.

By the Court: It is so ordered.