## ADVANCE-RUMELY THRESHER CO. v. YANCY.

No. 14538—Opinion Filed Sept. 16, 1924.

1. **Sales—Action for Purchase Price of Machinery—Enforcement of Warranty—Waiver of Conditions.**

Where plaintiff sells a tractor to defendant and takes notes and mortgage for purchase price and warrants it "to be well made and of good material, and with proper use capable of doing as good work as any other machine of the same kind, and rated capacity working under like conditions," and the enforcement of this warranty is conditioned upon notice directed to the home office and delivery of machine to the place where received, these conditions may be waived by the conduct of the seller, and the same is a question of fact for the jury under proper instructions of the court.

Same—Proof of Waiver.

The record examined, and held, sufficient to show waiver of notice and delivery of machinery in compliance with contract in case of breach of warranty.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Tillman County; Frank Mathews, Judge.

Action by Advance-Rumely Thresher Company, Incorporated, against I. W. Yancy for money due on notes and foreclosure of mortgage. Judgment for defendant, and plaintiff appeals. Affirmed.

Massingale & Duff and Wilson & Roe, for plaintiff in error.

P. Mounts, W. H. Hussey, and Herman S. Davis, for defendant in error.

Opinion by THREADGILL, C. Plaintiff in error was plaintiff and defendant in error was defendant in the trial court and they will be referred to here as they were there.

Plaintiff brought suit against defendant to recover on two promissory notes and to

foreclose its mortgage in one oil pull tractor-type 16-30, No. 15639, complete, with all parts and attachments, also one Guide for 16-30 oil pull, and one set of extension angle irons, for 16-30, which notes and mortgage were given for the purchase of said property May 31, 1919. At the time the notes and mortgage were given there was an order contract in connection with the sale in which the plaintiff warranted the machinery as follows:

"Said machinery is warranted to be well made and of good material and with proper use capable of doing as good work as any other machine of the same kind, size and rated capacity, working under like conditions."

This warranty was based upon the following conditions:

"Purchaser shall not be entitled to rely upon any breach of above warranty or to rescind this contract or to any claim or set-off against the vendor because of any breach, unless: (a) Notice of the defect or breach, particularly describing the same and specifying the time of discovery thereof, is given by registering letter addressed to vendor at its head office, posted within four days after such discovery; (b) such defect or breach appears within ten (10) days after the first use of the goods; (c) the vendor fails to remedy such defect or breach by substitution of parts or otherwise within a reasonable time after such receipt of such notice, which substitution it shall have the right to make. Purchaser shall render necessary and friendly assistance to vendor in and about remedying the defect. If vendor fails to remedy the defect purchaser shall have the right immediately to return the defective goods or parts in as good condition as when received by him to the place from which they were received and shall thereupon give vendor immediate written notice of such return by a registered letter addressed and mailed to vendor at its head office. Thereupon the money paid and security given by purchaser on account of the purchase price of the goods returned will be promptly returned by vendor, and vendor shall be released from all further claim. Failure so to return the goods or to give the aforesaid notices shall be taken as conclusive evidence that the warranty is satisfied. When, at the request of purchaser, some person is sent to remedy or repair machinery and same is found to have been carelessly or improperly handled, the expense incurred by vendor in putting it in working order shall be paid by purchaser. No attempt by vendor or its representatives to remedy any defects shall be deemed a waiver of any of the provisions hereof, and if a mechanical expert visits the machine and does not leave it working properly, purchaser shall give notice in writing or by prepaid telegram to vendor at its head office, stating specifically the failure or neglect complained of. If this agreement includes more than one machine or attachment, it shall be considered a separate agreement for each machine and attachment at separate prices, which prices bear the same ratio to the total price as the list price of each bears to the total list price of all, as shown by vendor's current price list, and second-hand machinery taken in trade shall not be taken into account; the warranty applies to each separate machine or attachment and the failure of one machine or attachment shall not relieve the purchaser from liability to pay for the others."

Plaintiff pleaded the notes and mortgages and defendant admitted the execution of the same, but denied liability on the ground of breach of warranty in failure to remedy, the defects when notified or furnish a new engine as demanded. Plaintiff replied by pleading failure of defendant to give notice and to otherwise comply with the terms of the conditions upon which the failure was based. The issues were tried to a jury January 17, 1923, and resulted in a judgment for defendant, and plaintiff appealed setting out numerous assignments of error, but the principal question raised by the motion for new trial and petition in error, and discussed in the brief, was the sufficiency of the evidence to sustain defendant's affirmative defense and error of the court in instructing the jury. It is only necessary to consider the question of the sufficiency of the evidence to dispose of the appeal. There is practically no conflict in the testimony. The undisputed facts are, in substance, as follows:

Defendant received the machinery at Frederick, and in driving the engine home a distance of several miles, the engine gave trouble in failing to work as it should, and defendant in his testimony described the trouble as one in which, "it would thump and spit and go dead," and this habit continued, according to the testimony, and was never remedied by the plaintiff.

Out on the farm where they tried to operate the engine it was unsatisfactory, and soon defendant made complaint to a Mr. Pritchford, who represented the plaintiff at Frederick, and, in response to the complaint, plaintiff sent a man by the name of Burkholtz, who worked on the engine without any satisfactory results. While cutting wheat it took about half the time to work on the engine to get it to go the other half. It worked so bad the engineer, Scott, who operated the engine, quit and refused to serve as engineer. Upon another complaint to Mr. Pritchford, the company

sent a man from Dallas, Tex., and he tried to remedy the defects in the engine, but without success. Plaintiff, in testifying as to how the engine acted after the second man worked on it and after Pritchford of Frederick worked on it, stated:

"Well it would spark and go and then it would quit and we would crank it, some of the boys cranked and I put my thumbs on each one of the cylinders and spark plugs and sometime not feel any impulse at all and then after a while pretty near knocked me down, and then make it go and hit and then go dead again and we thought perhaps it was the full feed and the carbureter, and Tom Pritchford cleaned out the carbureter and worked on the magneto and put a new magneto on and it would do the same thing."

After this, during the summer, a man came claiming to be a factory man of the company, and he worked on the machinery with no better results. Then the man who owned the separator and in partnership with defendant, in threshing, became disgusted with the unsatisfactory work of the engine, and took the separator away and they didn't try to do any more threshing with the machinery. In the fall of 1919, at request of plaintiff, defendant went to Dallas, Tex., and had a conversation with a Mr. Jones, the manager of the company at Dallas, and he insisted that the company furnish him a new engine, and Mr. Jones said they would make the engine run in a satisfactory way, and if they failed, they would give him a new engine, but he insisted that they had already failed to make the engine work and he was entitled to a new engine, and the Dallas office asked him to hold the engine. Then he wrote to the company at the head office, about January 3, 1920, informing it by letter of his trouble with the engine and of the unsuccessful attempts of their expert machinists to remedy the defects, and he proposed to the company that it furnish him a new engine, one that would work in a satisfactory way, and he would pay the notes, and if it would not do this he desired to know what it would have him do with the defective engine, if they would not furnish him a new engine he desired to return the old engine in to the company. Again he wrote a letter to the company, May 11, 1920, acknowledging receipt of letter received from the company about the controversy, and in this letter he told the company that if it would not send him a new engine that would work he would have to call "the whole deal off," and it appears from the record that he waited till the latter part of the month of May before he abandoned hope of a satisfactory settlement with the company by being furnished with a new engine, and then he bought a new engine from another company as wheat harvest was at hand, and a few days after he received this engine, the plaintiff sent a man to see him and proposed to him that the plaintiff would send him a new engine if he would pay $100 freight on it, which he refused to do.

Plaintiff contends that this evidence was not sufficient to comply with the conditions of the warranty, or to show a waiver on part of plaintiff, citing the following authorities: Updegrove v. Gould Balance Valve Co., 57 Okla. 245, 156 Pac. 684; Scott v. Vulcan Iron Works Co., 31 Okla. 334, 122 Pac. 186; Moline Plow Co. v. Adair, 76 Okla. 4, 183 Pac. 499; Moline Plow Co. v. Wilson, 74 Okla. 89, 176 Pac. 970; Moline Plow Co. v. Hooven, 76 Okla. 250, 185 Pac. 102; King v. Towsley, 64 Iowa, 75, 19 N. W. 859.

We have examined these cases, and we do not think the facts in any of them fit the case at bar. They are cases based on contracts similar to this case, but differing widely in the necessarily decisive situation of this case, that the plaintiff had notice of the defective and unsatisfactory condition of the machinery and sent several different men to remedy the trouble, which was never satisfactorily done and of which the plaintiff had notice, and, on account of which it invited defendant to a conference with the branch office in Dallas, Tex. The record shows that plaintiff responded to the complaint made to their salesman, Pritchford at Frederick, and to the complaints made to the branch office at Dallas, Tex., in the same way it was contemplated they should act if notice had been given it according to the requirements of the written contract.

It is true the record is not sufficient to show strict compliance with the terms of the warranty in the matter of notice, nor in the matter of rescinding the contract, but we think it is sufficient to show waiver of the terms. The plaintiff knew of the complaints against the machinery and responded to those complaints by sending their machinists to remedy the trouble, and the branch office at Dallas, Tex., knew of the trouble, and, according to plaintiff's testimony, when he proposed to give up the machinery, directed him to keep the engine and if they did not make it work the company would furnish the new engine, and they failed to make it work and conceded that it could not be made to work by offering to furnish a new engine, but at such a late date, in the season for harvesting

grain, in the spring of 1902, that plaintiff had a right to refuse to accept the engine and upon the terms offered. The acts of the plaintiff are sufficient to show that it had waived the matter of strict compliance with the requirements of the contract. Hart-Parr v. Duncan, 75 Okla. 59, 181 Pac. 288; J. I. Case Threshing Machine Company v. Huber, 160 Mich. 92, 125 N. W. 66, 32 L. R. A. (N. S.) 212; 16 Cyc. 578.

Taking this view of the evidence, we think the trial court was right in over-ruling the demurrer to the evidence, and in refusing to direct a verdict for plaintiff, and in overruling motion non obstante veredicto, and we think the court's instructions to the jury were well founded and covered the law applicable to the case.

We, therefore, recommend that the judgment be affirmed.

By the Court: It is so ordered.