## SHAW-SPEARS GIN CO. v. APACHE COTTON OIL & MFG. CO.

No. 12504—Opinion Filed Sept. 8, 1925.

Rehearing Denied Oct. 27, 1925.

**1. Appeal and Error — Sufficiency of Evidence—Conclusiveness of Verdict.**

Where there is competent evidence introduced at the trial, reasonably tending to support the verdict of the jury, and no prejudicial errors of law shown in the instructions of the court, or its ruling upon law questions presented during the trial, the verdict and finding of the jury are conclusive on appeal to the Supreme Court.

**2. Sales—Reservation of Title by Shipper Taking Bill of Lading in Own Name.**

Where the seller takes a bill of lading which expressly stipulates that the goods are to be delivered at the point of destination to himself, or agent, or to his order or assigns, no title passes to the buyer until the draft is paid and the bill taken up. When

the bill of lading is thus taken in the shipper's name, the presumption arises that he intends to retain the title and ownership of the goods in himself until paid for.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Latimer County; G. M. Barrett, Judge.

Action by Apache Cotton Oil & Manufacturing Company, a corporation, against the Shaw-Spears Gin Company, a partnership, to recover damages for the breach of a contract of sale of certain cotton seed. Judgment for plaintiff, and defendant appeals. Affirmed.

Philas S. Jones and Hulsey, Null & Hulsey, for plaintiff in error.

Snyder, Owen & Lybrand, for defendant in error.

Opinion by FOSTER, C. This appeal is prosecuted by the plaintiff in error, Shaw-Spears Gin Company, a partnership, to reverse a judgment of the district court of Latimer county in favor of the defendant in error, Apache Cotton Oil & Manufacturing Company, a corporation, for the alleged difference in the contract price and the reasonable value of a car of cotton seed consigned by the plaintiff in error to the defendant in error at Chickasha, Okla. Parties will be hereinafter referred to as they appeared in the trial court.

Issues were joined in the trial court and the cause was tried to a jury, resulting in a verdict and judgment in favor of the plaintiff for the sum of $1,094, and costs of suit. From this judgment and from a judgment overruling their motion for a new trial, the defendant appeals to this court for review.

The errors relied on by the defendant for a reversal of the case relate to the admission by the trial court of certain alleged irrelevant, incompetent, and immaterial testimony and in the giving of certain instructions. It is urged that the court, in the instructions given to the jury, misconceived the law applicable to the pleadings and the evidence in the case. In order to determine the applicability of these instructions, most of which are criticized by the defendant, in its brief, it will be necessary to review briefly the issues and the evidence in the case.

The plaintiff was a corporation operating a cotton oil mill at Chickasha, Okla., and was engaged in the business of manufacturing cotton seed oil and other by-products from cotton seed. The defendant was a co-partnership owning and operating a cotton gin at Wilburton, Okla. On October 29, 1919, the plaintiff, through its agent, J. N. Steele, communicated over the telephone with A. F. Clemmons, representing the defendant, concerning the purchase of a car of cotton seed. In this telephone conversation, the plaintiff learned that the defendant was then loading a car of cotton seed for the market, and after some further conversation, it was agreed that the plaintiff would buy this car of cotton seed for the sum of $75 per ton, basis prime seed, and that a written confirmation of the sale would follow immediately. On the same day the following written confirmation was mailed by the plaintiff to the defendant (omitting caption):

"Gentlemen: This is to confirm the purchase of one car of cotton seed from A. F. Clemmons, Shaw-Spears Gin Company, the price of $75.00 per ton f. o. b. cars Wilburton. Shipment 10-29-19. The above seed are guaranteed to be clean, sound and dry, free from dirt, trash and bolls, and are subject to mill weights and inspection.

"Apache Cotton Oil & Mfg. Co.,
"J. N. Steele, Agent."

On the same day, the seed were loaded by the defendant on the rails and billed shipper's order with draft attached. The draft with bill of lading attached was forwarded through the usual channels for collection and paid by the plaintiff on November 3, 1919. However, the car of seed did not reach its destination at Chickasha until November 10 1919. Upon the arrival of the car at Chickasha, the plaintiff opened the car and found that the seed were black, sour and rotten and were totally unfit for use in the manufacture of cotton seed oil and other by-products, which the plaintiff was engaged in manufacturing. After notifying the defendants of the defective condition of the seed and after failure by it to return the purchase price of the car of seed in the sum of some $2,250, the plaintiff disposed of the cotton seed on the market to the best advantage, whereby it claimed that it sustained a loss equal to the difference between the contract price paid and the amount actually received for the seed in their wet and damaged condition. It was the plaintiff's theory that under its contract with the defendant, the defendant expressly warranted the cotton seed to be good prime seed and that this warranty was breached by it in that it delivered to plaintiff, on November 3, 1919, when the draft was paid, wet black and rotten cotton seed, totally

unfit for the purposes for which they were purchased.

It was also the plaintiff's theory, as we understand it, that there was a breach by the defendant of an implied warranty to furnish that class and quality of seed ordinarily and usually employed by business concerns engaged in the manufacture of cotton seed products. Plaintiff's claim of right to recover, however, was not based upon any fraud, deceit or misrepresentation of the defendant in inducing the plaintiff to purchase from it a car of the cotton seed which it knew to be in a spoiled and rotten condition. Under the plaintiff's theory the liability of the defendant would be complete, regardless of whether they knew the seed were damaged or rotten if, in fact, they expressly warranted the seed to be good prime seed and free from dirt, trash, and bolls.

The terms of the written confirmation of sale, to the effect that the seed were guaranteed to be clean, sound, and dry, free from dirt, trash, and bolls, in connection with the testimony of plaintiff's agent, Mr. Steele, to the effect that in his telephone conversation with Mr. Clemmons, it was agreed that the price of $75 per ton was based upon prime seed, and that prime seed were good dry seed, free from dirt, trash, and bolls, in connection with the defendant's admission that the seed were to be good seed, are sufficient, we think, to sustain the verdict of the jury in this particular, and especially so since it is admitted that the price paid, to wit, $75 per ton, was the current maximum price for prime cotton seed in Oklahoma at the time of this transaction.

It follows that the instructions of the court embodying the theory of liability for breach of an express warranty of quality were applicable to the issues and evidence in the case.

It is contended by the defendant, however, that the sale of the cotton seed in question to the plaintiff was an absolute sale thereof when loaded on the rails at Wilburton, by virtue of which the title and ownership thereof then passed to the plaintiff, and that the trial court, in its instruction No. 3, erred in instructing the jury upon the theory that the title to the car of cotton seed did not pass from the defendant to the plaintiff until November 3, 1919, when the plaintiff paid the draft and took up the bill of lading. It is true that by the terms of the written confirmation hereinbefore referred to, the transaction for the purchase of the cotton seed is shown to have been a completed transaction when the cotton seed was loaded on the rails at Wilburton. It is also true that in another letter of confirmation, receipt of which was acknowledged by the defendant, mailed the day following, it is shown that the defendant was to mail an invoice of a car of cotton seed as soon as same was loaded. The record shows, however, that the defendant failed to mail the invoice as required by the confirmatory letter of October 30, 1919, but, on the contrary, the bill of lading was made subject to shipper's order with draft attached, drawn on the plaintiff by the defendant and sent to the bank for collection, under which the title to the car of seed was reserved in the defendant until the payment of the draft by the plaintiff.

The plaintiff, on the 3rd day of November, 1919, went to the bank, paid the draft, and took up the bill of lading. The car of cotton seed did not arrive until some seven or eight days thereafter. In these circumstances, the defendant, having abandoned the contract as originally made and as contained in the separate confirmation sent in pursuance of the agreement and undertstanding reached over the phone on October 29th, and having in lieu thereof offered another contract whose terms and conditions varied materially from that originally agreed upon, and the plaintiff, having by its conduct in accepting and paying the draft, acceded to the terms and conditions imposed by the defendant in its subsequent proposal, we think the defendant is estopped now from asserting or claiming any of the benefits accruing to it under the original contract.

The contract, by the conduct of both parties thereto, has received a practical construction to the effect that the title to the cotton seed was reserved in the defendant until the draft had been paid. The shipment was made shipper's order, "notify" Apache Cotton Oil & Manufacturing Company. Under a shippers order "notify" bill, which is forwarded by the consignor with draft attached, no title passes until the draft is paid and the bill taken up. In 24 R. C. L. page 44, it is said:

"If the buyer is drawn against and the draft attached to the bill of lading, which is to be delivered to him only upon payment of the draft, he can only acquire title and right of possession by such payment; * * * his tender of the agreed price confers on him no title or right to possession."

See, also, St. L. & S. F. Ry. Co. v. Allen, 31 Okla. 248, 120 Pac. 1090; Willman Mercantile Co. v. Fussy (Mont.) 39 Pac. 738.

We think instruction No. 3 correctly stat-

ed the law applicable to the issues and evidence in the case.

It is urged that the trial court erred in admitting certain evidence by A. F. Clemmons, in relation to an alleged similar transaction had with the Southland Cotton Oil Company of Oklahoma City. We are unable to agree with this contention. The primary matter in issue in the case at bar was whether or not the defendant warranted the quality of a certain car of cotton seed purchased from it by the plaintiff, and whether there had been a breach of this warranty in that the cotton seed was not as represented. The defendant admitted having sold the Southland Cotton Oil Company a car of cotton seed a few days prior to the sale of the car in controversy to the plaintiff. These seed were shown to be of the same general character and quality as the cotton seed in dispute. There was no attempt to prove by the Southland Company that the cotton seed it bought was warranted by the defendant to be sound in quality and that this warranty was broken. The evidence objected to was elicited from one of the defendants on cross-examination. There was no attempt to prove by the witness a similar transaction with the Southland Company in which he warranted the seed to be sound in quality. The defendant was first interrogated with reference to whether or not the cotton seed sold by him to the Southland Company was damaged. This part of the examination was not objected to. The evidence, however, was material and relevant in view of his admission that he sold cotton seed to the Southland Company a few days prior to the sale of the seed in controversy shown to be of the same general character and quality as the seed in dispute. Had the Southland Company been offered as a witness to prove this fact, its evidence, in view of such admission, would have been relevant. Moody v. Peirano (Cal.) 84 Pac. 783. Thereafter, the scope of the examination was confined by the trial court to such questions as went to the credibility of the witness, the witness finally testifying, contrary to his former testimony, that he had made a settlement of some kind with the Southland Company for damaged cotton seed.

The contract with the Southland Company was excluded by the trial court and the jury admonished, in effect, that evidence of collateral transactions had no bearing on the case and limited the scope of the examination to such question as might throw light on the credibility of the witness. This, we think, was permissible on cross-examination.

Wide latitude is allowed the cross-examiner of a witness whose credibility may be drawn in question, the extent of such cross-examination resting in each case largely in the discretion of the trial judge. As before stated, it appears that the trial judge was careful to limit the scope of the examination pursued by plaintiff's attorney on cross-examination within proper bounds. We think no abuse of discretion or violation of any substantial right of the defendant in connection with the evidence under consideration sufficient to justify a reversal has been shown.

The jury by its verdict, not only found that there had been an express warranty of quality of the cotton seed by the defendant, but that this warranty had been breached in that the seed, when loaded on the rails, or at least when they were received and paid for by the consignee, four days later, were in a wet and damaged condition and unfit for use in the manufacture of cotton seed products.

There is evidence in the record which reasonably tended to support the verdict of the jury upon these issues. Summarizing this evidence, it disclosed that when the car was unsealed at destination, the seed were found to be rotten, sour, wet, and heated and unfit for use in the manufacture of cotton seed products; that the car had been carefully sealed; that there were no leaks in the roof of the car by which the seed might have been damaged in transit.

The judgment of the trial court is therefore affirmed.

By the Court: It is so ordered.

Note.—See under (1) 4 C. J. p. 851, § 2834; 2 R. C. L. p. 194; 1 R. C. L. Supp. p. 433; 4 R. C. L. Supp. 90, 5 R. C. L. Supp. p. 79. (2) 35 Cyc. pp. 196, 333; ann). 2 L. R. A. (N. S.) 1078; 24 R. C. L. p. 44; 4 R. C. L. Supp. p. 1526.