**LONG et al. v. IDEAL ELEC. & MFG. CO.**

No. 16532—Opinion Filed April 13, 1926.

Rehearing Denied Nov. 16, 1926.

**Sales — Breach of Warranty — Prescribed Course to Pursue.**

Where the parties to a contract of sale have stipulated what course shall be pursued by the purchaser in the event the warranty fails, such provision must be followed by him in seeking to enforce the warranty.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Tulsa County; W. B. Williams, Judge.

Action by Ideal Electric & Manufacturing Company against R. D. Long and H. H. Bell. Judgment for plaintiff, and defendants appeal. Affirmed.

West, Gibson, Sherman, Davidson & Hull, for plaintiffs in error.

Hulette F. Aby, William F. Tucker, and Frank Settle, for defendant in error.

Opinion by FOSTER, C. This was an action commenced in the district court of Tulsa county by the defendant in error, Ideal Electric & Manufacturing Company, a corporation, as plaintiff, against the plaintiffs in error, R. D. Long and H. H. Bell, as defendants, to recover upon a certain promissory note for the sum of $1,334.34, dated November 26, 1923, and payable April 26, 1924. Parties will be hereinafter referred to as they appeared in the trial court.

The execution and delivery of the note was admitted by the defendants, and they defended upon the ground that the note was without consideration, in that it had been given to cover the purchase price of a certain electric motor which was found to be defective and unfit for the purpose for which it was manufactured, and that the damages sustained by them, by reason of the alleged defective condition of the motor, exceeded the amount of said note.

A reply was filed by the plaintiff consisting of a general denial, and the cause proceeded to trial before the court without the intervention of a jury, a jury being waived. At the conclusion of the trial, on request of the defendants, the court made findings of fact and conclusions of law, in which it found that there had been a warranty by the plaintiff, that the motor should not be defective in workmanship or material, and that if the motor had been as warranted it would have been of the value of $2,045, but failed to find what the value thereof was at the time it was received by the defendant, for the reason that it found, as a matter of law, under the contract between the plaintiff and defendants, that defendants were bound to return the motor to the plaintiff for repair if there were any defects therein, and concluded as a matter of law that the plaintiff should recover of and from the defendants the amount of said note in the sum of $1,334.34, together with interest at 6 per cent. from November 26, 1923, until paid.

The trial court also declined to find that there was any defect in the motor at the time it was shipped, and concluded, as a matter of law, that the place of delivery was Mansfield, O., where it was placed on board the cars for shipment by the plaintiff.

To the action of the court in declining to find that the motor was defective when it was shipped by plaintiff, and in failing to find its value at the time it was received by the defendants at Tulsa, Okla., and in

refusing to find as requested by the defendants on these propositions, the defendants excepted. Motion for a new trial was filed by the defendants, heard, and overruled, and the cause comes on regularly to be heard in this court on appeal by the defendants from said judgment.

The record discloses that in the summer of 1923 the defendants, who were operating a rock crusher near Tulsa, Okla., received a communication from plaintiff offering to manufacture specially for the defendants some electric motors and furnishing estimates and terms. It was stated in this letter as follows:

"This letter subject to terms and conditions printed on the other side."

On the reverse side of the letter appeared the following:

"Should any apparatus furnished by us be found defective due to faulty workmanship or material within six months after the date of shipment, we will, at our expense, repair or replace same at our option f. o. b. our works."

Other communications were received by the defendants containing language of similar import, as a result of which the defendants, on July 30, 1923, placed an order with the plaintiff for four electric motors to be specially manufactured by it for use by defendants. The plaintiff proceeded at once to fill this order, but for some reason, due to financial difficulties on the part of the defendants, and by reason of the failure of the parties earlier to reach an agreement as to the terms and conditions of payment, the motors were not shipped out from plaintiff's factory at Mansfield, O., until about March, 1923, and did not reach the defendants until April 10, 1924. There were four motors included in the order, for which the defendants agreed to pay the sum of $5,285. Of this amount all had been paid at the time of this shipment of the motors from plaintiff's plant at Mansfield, O., excepting $2,-693.30, for which draft was drawn, and the further sum of $1,334.34, the balance represented by the note involved in the instant case. The motors were consigned to the order of the plaintiff, notify Zenith Limestone Company at Tulsa, Okla., the bill of lading being attached to a draft for $2,693.30. The draft was paid, the note for $1,334.34 delivered to the bank on behalf of the plaintiff, and the bill of lading turned over to the defendants at the point of destination, Tulsa, Okla. Defendants' plant was located a few miles west of Tulsa, and it was necessary for the defendants, after the shipment had been turned over to them at Tulsa, to have the railroad company move the motors out from Tulsa to their plant at Price, which was done. The motors were unloaded by the defendants on April 11, 1924, at Price, Okla., when, for the first time, it was discovered that one of the motors, described as the 150 hp. motor, was defective, in that one leg thereof was cracked through and through, so as to make the motor of less value than it would have been if delivered as warranted. However, the defendants installed the motor in their establishment, and thereafter until the trial continued to make such use of it as possible in its alleged defective condition. Several days thereafter defendants complained of the defective condition of the motor, and considerable correspondence ensued in an effort to reach some adjustment of the matter, but without success.

There was no conflict in the evidence that the contract price of the motor as warranted was $2,045, and that its value in the condition in which it was found when unloaded was about one-third of that amount. There was some conflict in the evidence as to whether the motor was cracked when it was loaded for shipment at Mansfield, O., but since the motors moved under a shipper's order, notify bill of lading, by which the title thereto was retained in the plaintiff until the payment of its draft at destination, Tulsa, Okla., it is plain under the rule established in this state, that if the motor was found to have been broken, the plaintiff would be liable if there should be any evidence in the record of the defective condition of the motor at Tulsa, Okla., and if the terms of the warranty contract between the parties to this action did not require the defendants, in the event of defects in the motor due to faulty workmanship or material, to return same to the factory for repair or replacement at the expense of plaintiff. Shaw-Spears Gin Co. v. Apache Cotton Oil & Manufacturing Co., 112 Okla. 202, 240 Pac. 732.

There is no evidence in the record tending to disclose the condition of the motor at the point of destination, Tulsa, Okla., and since the trial court under the conflicting evidence before it found that it was free from defect when loaded on the rails at Mansfield, O., the break might have occurred after it was turned over to the defendants and while in transit from Tulsa to Price.

However this may be, the decisive question for determination is, Did the trial court err as a matter of law in concluding that the

defendants were bound to return the motor to the plaintiff for repair or replacement, upon discovering defects therein?

While the contract of warranty involved is to be gleaned from the correspondence passing between the parties from time to time, its terms are nevertheless plainly set out therein. It stated that the defendants were buying from the plaintiff certain machinery, therein described, subject to certain terms and conditions. One of these conditions was that if the apparatus furnished by the plaintiff should be found to be defective, due to faulty workmanship or material, within six months after the date of shipment, the plaintiff, at its expense, would repair or replace the same f. o. b. its factory. Clearly this language imported an agreement on the part of the defendants to return the defective apparatus, in the event it was found to be defective, within six months to plaintiff's factory, so that it could be repaired or replaced. In other words the parties to the warranty contract stipulated what course should be pursued by the defendants in the event the warranty failed. The defendants, instead of returning the defective apparatus to the plaintiff for repair or replacement, upon discovering its defective condition, retained and used the apparatus claiming the right to recoup their damages against the plaintiff in an action for the purchase price.

Neither in the terms of the warranty contract nor in the situation of the parties at the time of the contract, in view of the purpose to be accomplished thereby, is anything to be found which suggests that it was not the intention of the parties to make the return of the apparatus for repair or replacement the exclusive remedy in the event defects were discovered therein.

The rule to be applied in a situation of this kind is stated in Voris v. Hall, 71 Okla. 44, 175 Pac. 220, in the first paragraph of the syllabus as follows:

"Where the parties to a contract of sale have stipulated what course shall be pursued by the purchaser in the event the warranty fails, such provision must be followed by him in seeking to enforce the guaranty."

In the body of the opinion this court, speaking through Mr. Justice Kane, said:

"There is no conflict in the authorities holding in effect that the parties may agree by provision in their contract to pursue a certain course or a certain remedy in case of breach of warranty, and that such course or remedy is exclusive of the ordinary remedies where it fairly appears to have been the intention of the parties. 5 Elliott on Contracts, 5111. So universal is this rule that to cite the authorities from other jurisdictions supporting it would be but a work of supererogation. The following are a few of the cases in this jurisdiction which hold that where the parties to a contract of sale have stipulated what course shall be pursued by the purchaser in the event the warranty fails, such provision must be followed by him in seeking to enforce the guaranty: Scott v. Vulcan Iron Works Co., 31 Okla. 334, 122 Pac. 186; Updegrove v. Gold Balance Valve Co., 57 Okla. 245, 156 Pac. 684. Indeed, the universality of the general rule is not questioned in Voris v. Gage et al., supra, but the conclusion reached by the court is based solely upon the erroneous view that the clause of the contract under consideration prescribing the course to be pursued was ineffective for that purpose, because it contravenes section 977, Rev. Laws 1910."

The defendants rely upon Obenchain & Boyer v. Incorporated Town of Roff, 29 Okla. 211, 116 Pac. 782, but in Voris v. Hall, supra, this court, after citing and following Scott v. Vulcan Iron Works Co., 31 Okla. 334, 122 Pac. 186, and other subsequent cases, omitted any reference to the Obenchain Case, and expressly overruled Voris v. Gage, 46 Okla. 748, 149 Pac. 150, stating that the rule in the overruled case of Voris v. Gage was based entirely upon an erroneous construction of section 977, Rev. Laws 1910.

It appears from an examination of the Obenchain Case, that the conclusion in that case was based upon certain provisions in the warranty contract, whereby the return of the apparatus for repair in the event of defects therein was made optional with the purchaser, and since we have found, under the warranty agreement involved in the instant case, that the provision for the return of the apparatus was in the nature of an exclusive remedy to be followed by the purchaser in the event of defects in the apparatus, the rule in the Obenchain Case could have no application to the case at bar.

In any event it is clear this court in Voris v. Hall, after overruling the earlier case of Voris v. Gage, reviewed the authorities and announced the rule which the court determined to be the universal rule on the subject.

It can serve no useful purpose to review the earlier cases on the subject in detail. We adhere to the rule announced in Voris v. Hall, and hold that plaintiff and defendants, upon discovering defects in the apparatus, should return the same to plain-

tiff's factory for repair or replacement, and such remedy is exclusive, and the defendants, having failed to pursue the remedy agreed upon, are not entitled to recover. The judgment of the trial court is therefore affirmed.

By the Court: It is so ordered.